Esmay *v.* Fanning.

———————◆————

SAME TERM. *Before the same Justices.*

ESMAY *vs.* FANNING.

In an action of trover against the bailee of a chattel, it is no defence to show a delivery of the chattel to a person not authorized to receive it.

It results from the very nature of a bailee's contract that if he fails to restore the article to the rightful owner, but delivers it to another person, not authorized to receive it, he is guilty of a conversion.

Where the parties to a contract of bailment reside in the same city, the property should be returned to the bailor, at his residence, unless there is some agreement to the contrary.

The fact that at the time of the bailment the property was stored by the bailor with a third person, will not authorize the bailee to return the property to such third person, after he has ceased to be the agent of the bailor.

Where property bailed remains in the possession of the bailee, trover can not be maintained against him by the bailor, until the article bailed has been demanded, and the bailee has neglected or refused to return it. But if the property has been delivered by the bailee to a third person, such delivery amounting to a conversion, proof of demand and refusal are not necessary.

THIS was an action of trover for a carriage. The pleadings were drawn up under the code of 1848. The complaint stated that the plaintiff, in June, 1846, being possessed of a carriage of the value of $250, at the request of the defendant, loaned and delivered the same to the defendant, to be by him safely kept for the plaintiff, and to be by the defendant re-delivered to the plaintiff on request; that the defendant did not safely keep the said carriage for the plaintiff, but converted the same to his the defendant's own use. That the defendant, although often requested so to do, has not returned the said carriage to the plaintiff, and the plaintiff claims damages, &c. &c. The com-

plaint was dated 12th August, 1848. The answer alledged that the defendant did safely keep the carriage, and denied the conversion thereof to the defendant's use. It then set out that the carriage was delivered by the plaintiff to the defendant with the privilege of using the same, in consideration of the defendant's storing and safely keeping the same, and for a further consideration that the plaintiff was to have the privilege of using the defendant's horses whenever he required the same. That the carriage was used occasionally by both parties, and the defendant's horses were used by the plaintiff. The defendant denied that he had failed to re-deliver the carriage to the plaintiff, but on the contrary, stated that he had re-delivered it to the plaintiff or his agent in as good order as it was when received by the defendant, &c.

The reply denied that the defendant safely kept the carriage for the plaintiff while it was in the defendant's possession. It also denied that the storage formed any part of the consideration for the loan of the carriage; alledged that the defendant promised to keep it safely, and denied that plaintiff was to use the defendant's horses as a consideration for such loan of the carriage, or that the carriage was used in common by the parties while it was in the defendant's possession. The reply further alledged that the loan of the carriage was made at the defendant's request and for his sole use, and without reward or hire. It denied that the defendant had re-delivered the carriage to the plaintiff or to his agent.

The cause was referred to a referee, who reported that he found as facts that about the 1st of June, 1846, the plaintiff loaned to the defendant the carriage in question, to be safely kept by the defendant for the plaintiff, and to be re-delivered to the plaintiff on request; that the defendant had been requested to re-deliver the same to the plaintiff; that the defendant and plaintiff might each use the carriage and the defendant's horses when he chose; that the carriage was obtained by the defendant from the livery stable of George L. Crocker, then of Albany city, and that he kept it safely till about the 1st November, 1846, during which time it was used occasionally by both par-

ties, plaintiff and defendant. That about the first of November, 1846, it was returned by the defendant to the stable of said Crocker; *which return of the carriage to the stable of Crocker, the referee decided was not a re-delivery of the carriage to the plaintiff or his agent.* He, therefore, reported in favor of the plaintiff for the value of the carriage at that time, on which judgment was thereupon given, as for a conversion of the carriage.

The defendant appealed from the decision of the referee. A case containing the whole testimony and various points ruled by the referee was returned, on the appeal, as parcel of the record. From the case it appeared that Crocker testified that he was not the agent of the plaintiff to receive back the carriage, at any time, and that the defendant returned the carriage to his the witness' stable, and the witness of his own accord notified the plaintiff that the carriage was left by the defendant at his stable; and the plaintiff refused to have any thing to do with it. It appeared also that the referee decided that a demand and refusal were admitted by the pleadings; to which the defendant's counsel excepted.

The plaintiff called one Nichols as a witness, who testified that in the summer of 1848, and before the commencement of this action, he, at the request of the plaintiff, called on the defendant and told him to return the said carriage to the plaintiff. On his cross-examination the defendant's counsel proposed to ask the witness to relate the answer which the defendant gave to that reply; this was objected to by the plaintiff's counsel and excluded by the court, and the defendant's counsel excepted. The defendant's counsel then offered to prove that the defendant said, that the carriage had been *returned to the plaintiff pursuant to the agreement between them.* This also was objected to and excluded, and the plaintiff's counsel again excepted to the decision. Other facts are alluded to in the opinion of the court.

The defendant's counsel insisted that the judgment should be reversed.

*F. S. Edwards,* for the defendant. I. No demand and refusal were proved, to entitle the plaintiff to recover. All

the evidence of demand and refusal will be found in the complaint and the testimony of Nichols. The complaint alledges that the plaintiff loaned and caused to be delivered to the defendant the wagon, and to be by the defendant safely kept for the plaintiff, and to be re-delivered by the defendant to the plaintiff on request. All that is claimed is simply a bailment, gratuitous on the part of the defendant. The allegation in the complaint°is that the defendant did not safely keep the said carriage for the plaintiff, *but that he converted it to his own use.* Then there is the usual conclusion of request to deliver; there is no allegation of demand and refusal negativing the conditions upon which the complaint charges the wagon was received. The whole complaint is based upon the supposition that the defendant disposed of the wagon to his own use. The answer expressly denies all the allegations of the complaint. It denies that the defendant did safely keep the wagon, while in his possession, for the plaintiff; that he converted the wagon and used and disposed of it to his own use; sets up a contract, as proved by the witness Crocker. It denies that the carriage was used in common by the plaintiff and defendant, while in the defendant's possession; that the horses were used in like manner without hindrance by the defendant. The 1st, 2d, 3d, 4th and 5th allegations of the answer were duly proved, as found by the report of the referee. The defendant denies that he has not as yet delivered the said wagon, and alledges that he has long since delivered the same to the plaintiff or his agent. If the general allegation at the conclusion of the complaint shall be construed to mean a demand of the defendant and a refusal to deliver, then it is insisted that the answer must be taken as denying every material intendment sought to be obtained by the allegation in the complaint. The answer charges that the defendant has long since delivered, &c.—denying in express terms the conclusion that after request he had not delivered. The case will then present at one view, under the pleadings, this position; at the time it is alledged the request was made the property was out of the defendant's possession, and placed under the control of the plaintiff. Taking this in connection

with the rule of law, when the *bailment is gratuitous and no proof or allegation of gross negligence*, the plaintiff must prove a demand and refusal in express terms.

II. No conversion of the property by the defendant, or any legal demand and refusal were proved.   There is no evidence in the case of any legal demand, or a conversion on the part of the defendant, except what may be gathered from the testimony of Nichols.   This witness does not state what is necessary to complete a demand and refusal.   There is no legal demand—the evidence is that he called on the defendant at the request of the plaintiff, and demanded the carriage, without stating where the carriage was to be delivered.   Where, as in this case, there was a gratuitous bailment, the property to be used in common, and to be delivered on request, *the bailee is not bound to seek the bailor, but is only bound to deliver on request*, that is, when the request is made to have the subject matter of the bailment present for delivery.   The demand here is to deliver to Esmay, without any proof or statement where Esmay lived.   An important fact to be proved to make a demand and refusal is wanting in this case ; *the defendant when demanded did not refuse to deliver*. The witness, in a form full of assurance, says, *you have got Mr. Esmay's carriage*, and without giving time for the defendant to reply, continues, you must return it to the plaintiff.   Now this can not in the strictest sense be called a demand and refusal—the demand should have been absolute and unqualified, to have afforded any evidence of a conversion. (*Philipot* v. *Kelly*, *N. & M.* 611, *3d ed., and E.* 106.   1 *Har. & W.* 134.)

III. The proof shows that the wagon in question was to be kept by the defendant in a safe and proper place, and to be used in common, with the defendant's horses, by both parties.   It is also proved that in the fall of 1846, two years prior to the commencement of this action, the wagon *was returned to the place of deposit*, and that the plaintiff was informed of such return— that at the time of the pretended demand and refusal *the wagon was not in the defendant's possession or control, and known to be so by the plaintiff*.   The defendant insists that the proof establishes what the law terms *a deposit only*.   The plaintiff had

no convenient place to keep the wagon and desired the defendant to keep it for him, and allow him the use of the defendant's horses. A mere depositary is answerable only for such *gross negligence,* as is equivalent to fraud. (*Foster* v. *Essex Bank,* 17 *Mass.* 500. *Edson* v. *Weston,* 7 *Conn.* 278. *Sodowsky* v. *McFarland,* 3 *Dana,* 205.) A naked bailee of goods is not liable to an action for them, at the bailor's suit, until after a *demand and refusal.* (*Brown* v. *Cook,* 9 *John.* 361. *Hosmer* v. *Clark,* 2 *Greenl.* 308.) Was there such gross negligence on the part of the defendant as creates a liability ? The referee's report finds the fact that in the keeping of the wagon, or in its use there was no negligence. But it is sought to charge the defendant with a conversion in returning the wagon to the original place of deposit, instead of going to the plaintiff and having him appoint a place of delivery. This is the sole ground of action. Can it be said that in this there was gross negligence ? No complaint is made that the place of return was an improper one, for the plaintiff had himself selected the place as a fit and proper one for the deposit of the wagon. Was there negligence in giving the plaintiff proper notice of the return of the wagon ? Clearly not. The proof shows that he was informed a few days subsequent to its return of the fact. If there is any thing that in any way favors the idea of negligence it must be looked for in the conduct of the plaintiff. The most that can be said in giving a name to this transaction is *" a hire of deposit."* The law seems to be that a depositary for hire or reward, is answerable only for gross negligence. If he uses due care and the property is stolen, he is excused, and in case of loss the onus of showing negligence is on the owner. (*Case before cited,* 17 *Mass.* 500. *Platt* v. *Hibbard,* 7 *Conn.* 497. *Rap.* v. *Grayson,* 2 *Blackf.* 130. *Knapp* v. *Curtiss,* 9 *Wend.* 60. *Brown* v. *Dennison,* 2 *Id.* 593. *Millson* v. *Salisbury,* 13 *John.* 211.) There was no negligence or default on the part of the defendant, and the *onus* of proving such default rested on the plaintiff. (3 *Taunt.* 264. 5 *Barn. & Cress.* 322. 1 *H. Black.* 298. *Jones on Bailment,* 106. *Note* 403, *Steph. Nisi Prius,* § 2703.) This action, if brought in good faith, was wholly unnecessary ;

the plaintiff has known for more than two years where the wagon was, and has made no complaint of any improper deposit. He has been at liberty at any moment to take the wagon without let or hindrance. No one has interposed any objection to the assertion of his right of possession, and if a charge for storage has accrued (of which there is no evidence,) it is the indifference manifested by the plaintiff that has caused it.

IV. Was the return of the wagon by the defendant to the original place of deposit—no place being specified or proved for its return—a conversion of the wagon, or was it, in view of the facts of the case as proved, a delivery to the plaintiff? It is contended that the rule of law as established between carriers should apply to the defendant in this case. It is admitted that where a common carrier receives goods for transportation, and he delivers them to a third person not the one authorized, although no wrong was intended, and the goods become lost to the owner, the carrier would be held liable in trover; but even here, the carrier is not liable in trover for an omission—it is the misfeasance, the wrongful act that constitutes the action of trover. (6 *Hill*, 587, *and cases there cited.*) The reason of the cases that charge a carrier for a mis-delivery, grows out of his contract to deliver, and his special character. But a warehouseman or bailee has never been subjected to the same rules that govern common carriers. (2 *Kent's Com.* 441. 4 *T. R.* 581. *Peake's N. P.* 114. 4 *Esp. N. P.* 262.) A warehouseman or depositary of goods for hire, is only bound for *ordinary care*, and is not liable for a loss arising from accident, *where he is not in default*; and he is not in default except where he fails to exercise due care and common diligence; and even if the goods be stolen by *his servant* he is not liable, *unless he has been guilty of gross negligence*; the liability of a warehouseman in this particular being different from that of a common carrier. (2 *Kent*, 141, 4 *Esp. N. P.* 315. 7 *Cowen.* 497, 500, *n. b*, *and cases.*) But even the case of a warehouseman is stronger than that of a simple bailee; the one has a commercial signification for reward, and he assumes a liability significant of his character; a bailee as in this case has no such relative stand-

Esmay *v.* Fanning.

ing or liability; and can only be made liable for some *wrongful act.* In *Packard* v. *Getman,* (4 *Wend.* 613,) it was held that to charge a common carrier in an action of trover, an actual conversion must be proved ; that in such case a demand and refusal to deliver the goods is not sufficient evidence of a conversion, unless they were in the possession of the defendant, or under his control at the time of the demand ; *the refusal in such case raises no presumption of conversion.* In all these cases there must be *an injurious conversion, something more than a mere omission.* (5 *Burr.* 1825. *Hallenbake* v. *Fish,* 5 *Wend.* 547.) As against this defendant evidence of some tortious act was essential to maintain the action of trover. (2 *B. & P.* 438. *Steph. N. P.* 2709. 6 *Tenn. Rep.* 72.) The demand should have been made upon the person who at the time had the possession of the goods. (*Id.* 686.) A demand and refusal is no evidence of conversion, unless the property is in the possession or under the control of the person upon whom the demand is made. ( *Yale* v. *Saunders,* 16 *Verm.* 240. *Vincent* v. *Cornell,* 13 *Pick.* 294.) Was the possession in the defendant ? This will not be claimed, for there is positive proof that the plaintiff knew where the wagon was, when the demand was made on the defendant. Was the wagon under the control of the defendant ? The return of the wagon to the original place of deposit, and a notification of such return to the plaintiff, placed the wagon beyond the control of the defendant. Had it been a sale by the defendant, the setting apart of this property as delivering to a third person for the buyer's use, and a notice to the buyer of such fact, would unquestionably have passed the title. Or suppose money had been deposited in like form for the use of the plaintiff, and he notified, such act would have constituted an equitable assignment of the money so deposited. The plaintiff's right of action, if any, was against the holders of the wagon. (*Packer* v. *Gillies,* 2 *Camp.* 337, *n. Peet* v. *Baxter,* 1 *Stark. Rep.* 472. 1 *Selw. N. P.* 425.) The plaintiff should have demanded the wagon of the holder. (2 *Burr. N. P.* 438.)

V. The refusal by the plaintiff to receive the wagon, when

Esmay v. Fanning.

notified by Crocker of its return, discharged the defendant from all liability. The evidence is explicit that two or three days subsequent to the return of the wagon to Crocker's stable, Crocker informed the plaintiff that the defendant had returned the wagon to his stable; the plaintiff, in answer, replied "he would have nothing to do with it," and Crocker then stated to the plaintiff "*he would store the wagon*, and they could *settle it* between themselves." In this conversation the plaintiff does not rest his objection to the receipt of the wagon, on the ground that the defendant had failed to return it to his house, or other place of deposit—the plaintiff makes no issue that the return was improper. The true ground of the plaintiff's position, and his objection, will appear by referring to Crocker's testimony. It was on the supposition that the defendant had injured the wagon while in his possession; and this view is strongly supported by referring to the evidence of Russell, and the complaint. But it is enough to say that the plaintiff, when notified by Crocker, did not put his refusal to receiving the wagon on the ground that the defendant had improperly returned the wagon, and the entire evidence of the plaintiff's case, if it proves any thing, proves that his refusal was based upon the supposed fact that the defendant had materially damaged the wagon while in his possession. The defendant insists that the plaintiff was required to apprise the party why he objected to the receipt of the wagon, so that if any further act was required of the defendant he might perform. The acquiescence of the plaintiff as to the possession of the wagon by Crocker estops him from now setting up, that the return was insufficient. It may be urged that Crocker's agency had ceased, and that his notification of the return of the wagon was an unauthorized act; but this was not so in fact. Crocker's stable was the place where the defendant found the wagon, and where he had the right to presume it was desired it should be returned. But waiving this conclusion, the act of notification by Crocker was beneficial in its operation and result to the defendant: he had therefore the right of adopting it as his own; and in such case the adoptive authority related back to the day of the tender by Crocker. (*See Lawrence* v.

*Taylor*, 5 *Hill*, 107, 113.) In *Mitchell* v. *Williams*, (4 *Hill*, 13, 15,) the court held that when goods came lawfully into the defendant's hands, to make his mere inaction decisive evidence of conversion—in other words, to make it a refusal—*there should have been an attempt to embarrass the plaintiff in his steps to obtain possession.* It is submitted that this is the true rule. There should be what is equivalent to a wrong, some interference with the rights of others, and an attempt to embarrass the owner. Can it be urged that the defendant's act is to be subject to this rule; that the return intended as an act beneficial to the plaintiff, and in fact operating as such, shall be so construed as to mean an attempt to embarrass the plaintiff in his asserting his right of possession? Such a construction would always invite litigation. This rule seems to be supported by *Drake* v. *Shorter*, (4 *Esp. Rep.* 165,) where the court held that a party who endeavors to do a charity to another's property shall not be held to respond in trover. (*See also Rall* v. *Bleake*, *Dudley*, 18.) It has been held by several eminent legal writers, that where no place is agreed on as the place of deposit, the property ought to be delivered at the place where it was found. (7 *Conn. Rep.* 110. 3 *Wash. C. C. R.* 140. *Chip. on Cont.* 27. *Story on Bail.* 117.) The bailment in this case being in trust for the benefit of both the defendant and the plaintiff, no action lies by the plaintiff until refusal by the defendant of leave to the plaintiff to enjoy the use of the wagon as per agreement. The possession was a joint possession; no denial of the use of the wagon has been proved.

VI. The referee erred in rejecting the declarations made by the defendant at the time the demand of the wagon was made by the witness Nichols. The offer to prove the answer of the defendant to the demand was clearly legal and proper; and no adjudicated case can be found that will in any form impeach this position. The offer of the defendant here was to prove that he informed the witness when the demand was made, that he had returned the wagon according to the understanding between them. A bailee who *asks time to deliver* when a demand is

made, is not guilty of a conversion of goods. (*Dowd* v. *Wadsworth*, 2 *Dev.* 130.) A demand and refusal are not evidence of the conversion where the defendant has no interest in, or control over the property, and puts his refusal on the ground that he is not in possession. (*Morris* v. *Thompson*, 1 *Rich.* 65.) When the demand is made on the defendant and he answers that the property is not in his possession or control, his refusal in this case forms no cause for the action of trover. (*Steph. N. P.* 2688. *Smith* v. *Young*, 1 *Camp.* 439. 2 *Saund.* 47, note e. *Ball. N. P.* 44, n. b. *Severin* v. *Reppel*, 4 *Esp.* 156. 5 *Burr.* 2825.) A demand and refusal is no evidence of a conversion, when it is apparent that the defendant has made no conversion. (1 *Vent.* 223. 2 *Salk.* 655. 1 *Rol. Ab.* 5.)

VII. The referee should have nonsuited the plaintiff for the reasons before stated.

VIII. The referee erred in deciding that there was due to the plaintiff the sum of $125, as the value of the wagon.

IX. The evidence of the return of the wagon was proper in mitigation of damages.

*H. C. Van Vorst*, for the plaintiff. I. The plaintiff is entitled to recover in this action the value of the carriage, unless the defendant has proved a return of the carriage to the plaintiff; because the defendant took the carriage on the condition that he would re-deliver the same to the plaintiff on request, which request is both admitted and proved. II. A delivery to a third person is not a compliance with the conditions on which he obtained the loan of the carriage—therefore the delivery to Crocker is no return to the plaintiff. III. A breach of the trust under which the defendant received the carriage, is evidence of a conversion; a non-compliance with a request to deliver, is such a breach. (10 *John.* 172. 9 *Wend.* 167. 4 *T. R.* 260. 2 *Harr.* 71. 6 *Shep.* 382. 16 *Verm.* 138.) IV. The delivery of the carriage to Crocker was not a return. The defendant undertook to re-deliver the carriage to plaintiff on request—not to Crocker or any other person. When the defendant took the carriage from Crocker, Crocker had nothing further to do with

it. Crocker was not the plaintiff's agent in the premises, nor was he authorized to receive the carriage, and a delivery to him was a violation of defendant's understanding with plaintiff. (*Story on Bail.* § 414. 2 *Kent*, 507. 4 *Wend.* 377. 4 *Cowen*, 452. *Syed* v. *Hays*, 4 *Durn. & East*, 264.) V. The defendant did not re-deliver the carriage on demand; that a demand was made as alledged in the complaint, is not denied. But defendant alledges in his answer that he has re-delivered the same to the plaintiff or his agent; and it is incumbent on him to show a return either to plaintiff or his agent. He has not proved a return to either, and has failed in subtantiating the allegation in his answer. (*Devereux* v. *Barclay*, 2 *Barn. & Ald.* 702.) VI. There was a demand also proved by Nichols, about two weeks before suit brought. The non-compliance with the demand after a reasonable time has been afforded for a delivery would be tantamount to a refusal, and a presumptive evidence of conversion, and throws upon the defendant the burthen of rebutting the presumption. (4 *Hill*, 16.) Non-compliance, after a demand, is virtual refusal. (8 *John.* 445. 5 *Com. L. Rep.* 467. 2 *Mass.* 398. 1 *Cowen*, 330.) VII. The defendant should have delivered the carriage to the plaintiff, the lender, at his dwelling house; for where no place is pointed out by the contract the return should be made there, or defendant should have called on the plaintiff and ascertained from him where he would have the same delivered. (*Barns* v. *Graham*, 4 *Cowen*, 452. *Story on Bail*, § 257 *to* 261, § 265. 4 *Pothier Pr. a usage, n.* 31, 33.) VIII. The defendant never gave the plaintiff notice of the return to Crocker; what Crocker told plaintiff was his own suggestion, nor does it appear when this notice was given. The defendant never authorized or requested Crocker to notify the plaintiff; he left the carriage under Crocker's shed and did nothing more. IX. It was not proper for the defendant to show what reply he made to Nichols when he demanded the carriage from him; because it would make the defendant's declaration evidence in his own favor; and in addition, what he offered to prove was not evidence of a return, and, unsupported by positive proof of a return, would amount to

nothing.   X.  The objections to the evidence of Crocker are not well taken, either in form or substance ; and it was too late to object after the answer was taken.   XI.  The pleadings and proofs show the loan of the carriage to the defendant, and the terms thereof, and that a demand of the same had been made ; the only question to be tried was the fact of a return, the burthen of proving which rested .upon the defendant, and in default of proof of this fact the plaintiff was entitled to a judgment. XII. The court will not disturb the report on the question of "return," as that is a question of fact which the referee has decided ; nor of the amount of damages.

*By the Court*, WILLARD, J.   The gist of this action is the conversion and deprivation of the plaintiff's property, and not the acquisition of property by the defendant.   (3 *Barn. & Ald.* 685.)   The general requisites to maintain the action are, property in the plaintiff; actual possession or a right to the immediate possession thereof; and a wrongful conversion by the defendant.   (4 *Barb. S. C. R.* 565.)   The plaintiff's title was not disputed in this case.   The issue is on the conversion : or, in other words, it is whether the defendant re-delivered the carriage to the plaintiff or his agent, before the commencement of this suit.   The plaintiff alledges a refusal to re-deliver it, and the defendant avers that he did re-deliver it.   The referee found the fact that the defendant did not re-deliver the carriage to the plaintiff or his agent ; and the proof is that Crocker, to whom the defendant did deliver the carriage, in November, 1846, was not, at that time, the agent of the plaintiff, or authorized to receive it.   And there is no evidence that the plaintiff ever assented to that delivery.   The question, therefore, becomes narrowed down to this : whether a bailee of a chattel is answerable in trover, on showing a delivery to a person not authorized to receive it.   In *Devereux* v. *Barclay*, (2 *Barn. & Ald.* 702,) it was held that trover will lie for the mis-delivery of goods by a warehouseman, although such mis-delivery was occasioned by mistake only—and this court, in *Packard* v. *Getman*, (4 *Wend.* 613,) held that the same action would lie against a

common carrier, who had delivered the goods, by mistake, to the wrong person. The same point was ruled by Lord Kenyon in *Youl* v. *Harbottle*, (*Peake's N. P. Cases*, 49,) and by the English Common Pleas in *Stephenson* v. *Kent*, (4 *Bing.* 476.) If trover will lie against a common carrier or a warehouseman for a mis-delivery, it can, under the like circumstances, be sustained against a bailee for hire, or a gratuitous bailee. It results from the very obligation of his contract, that if he fails to restore the article to the rightful owner, but delivers it to another person, not entitled to receive it, he is guilty of a conversion. (*Story on Bail.* § 414.)

The referee found as a fact that the carriage was not re-delivered to the plaintiff, but was delivered to another person having no right to receive it. The evidence detailed in the case warranted that finding, and it can not be disturbed by this court. We think the referee drew the right conclusion from that fact, and justly held the defendant liable for the value of the carriage.

As the parties all lived in the same city, the carriage should have been returned to the plaintiff, unless there was some agreement to the contrary. The fact that the carriage was stored by the plaintiff in Crocker's stable, at the time the defendant first received it, did not authorize him, under a contract to return it to the plaintiff, to deliver it to Crocker, who had ceased to be the plaintiff's agent. The place of delivery of the carriage was the plaintiff's residence. (*Barns* v. *Graham*, 4 *Cowen*, 452. *Story on Bail.* §§ 257, 261, 265.) A delivery elsewhere, without authority, was a conversion. We have not adopted the civil law, which allowed the bailee, in case no place was agreed on, to restore the property to the place from which he took it. (*Story on Bail.* § 117.)

It was not necessary in this case to prove a demand and refusal. Had the carriage remained in the defendant's possession, no action could have been maintained by the plaintiff against the defendant, until it had been demanded, and the defendant had neglected or refused to return it. A demand and refusal are not a conversion, but evidence from which it can be inferred.

Esmay *v.* Fanning.

A demand is necessary whenever the goods have come lawfully into the defendant's possession; unless the plaintiff can prove some wrongful act of the defendant in respect of the goods which amounts to an actual conversion.    (2 *Leigh's N. P.* 1483. *Bates* v. *Conklin,* 10 *Wend.* 389.    *Tompkins* v. *Haile,* 3 *Id.* 406.)    As the delivery of the carriage by the defendant to Crocker instead of the plaintiff amounted to a conversion, proof of a demand and refusal was unnecessary.    The testimony of Nichols, therefore, to prove a demand was immaterial, and the decision of the referee, refusing to permit the defendant to prove what he said at the time the demand was made, could have no influence on the result of the cause.    Had a demand been necessary, the declaration of the defendant in answer to the demand would have been admissible, as well on the part of the defendant as of the plaintiff.    The decision of the referee that a demand and refusal were admitted by the pleadings, whether right or wrong, worked no injury to the defendant.

A wide range was taken on the argument, on the *implied* obligations resulting from the various kinds of bailments, and particularly with reference to the restoring the thing bailed to the bailor.    But it seems unnecessary to discuss this subject, in this case, because here there was an *express* agreement to return the property *to the plaintiff,* on request.

The judgment must be affirmed.