ROWLANDS, Respondent, vs. ELECTRICAL CONSTRUCTION COMPANY, Appellant.

*April 6—May 3, 1921.*

*Sales: Executory contract to sell: Reservation of option to rescind: Bailment: Delivery of bailed goods to one claiming title: Estoppel: Conversion.*

1. An instrument whereby a person who was to receive an automobile as part payment on lands agreed, in case the sale of the lands was consummated, to accept a sum of money from her broker as a release from all claims and to transfer the automobile to the broker, is not a bill of sale, but an executory contract of sale, in view of a clause in the agreement which provided that in case the automobile was not transferred to the broker the money must be refunded.

2. The executory contract of sale, reserving an option to rescind, made before the seller acquired title to the car, is rescinded by the seller making a bill of sale to the plaintiff after acquiring title to the car.

3. The fact that plaintiff was the agent of C. in making a conditional contract to sell an automobile to F. is not available to defendant, with whom plaintiff, after subsequently receiving a bill of sale of the car from C., stored it, as an

estoppel against plaintiff claiming title to the car, in a suit for its conversion by delivery to F.

4. The defendant, who knew that plaintiff claimed title to the car, was liable for conversion in delivering it to another claiming title, though acting in good faith.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge.  *Affirmed.*

Action for damages for conversion of an automobile, or for failure to deliver the same in accordance with a contract of bailment.  On trial by the court without a jury plaintiff had judgment.  Defendant appeals.

One May Cheney owned a parcel of land near Racine and had engaged plaintiff as her agent to make a sale thereof. Morris Feldman was a tobacco dealer from whom the said Mrs. Cheney had purchased some supplies and who claimed that she owed him certain sums of money.  This was denied by her.  The amount of these debts, if any, did not appear. Feldman knew of her desire to sell the land and procured a prospective purchaser in the person of one John Chovan. Chovan was willing to give for the land $2,200 cash and a second-hand Mitchell automobile which he then had in storage for a consideration in defendant's public garage in Racine.  Defendant had a chattel mortgage on the machine for part of the purchase price and had certain other charges on account of said machine, the unpaid notes and charges totaling about $186.62.

On January 3, 1918, all these parties except defendant met in plaintiff's office to arrange the sale, and an agreement was signed by Mrs. Cheney and Chovan for the sale of the land for $2,700 including the Mitchell automobile, and the balance, $2,200, to be paid in ten days upon showing good title and tendering a deed.

Feldman claimed that there had been an agreement between him and Mrs. Cheney by which he was to have the car for a consideration of $300 paid to her.  She denied having made such an agreement.  According to plaintiff's

testimony and that of Mrs. Cheney, she discovered at this time that the machine was a Mitchell instead of a Ford, as she claimed Feldman had represented to her, and was therefore of greater value. There was considerable testimony that on account of this she said she would not let Feldman have the machine. The latter offered to pay more, $375, and an agreement was drawn up to that effect. Mrs. Cheney, however, refused to sign this agreement until the addition of the final sentence which, it is claimed by plaintiff, was added for the purpose and with the intent of reserving to Mrs. Cheney the option of withholding the machine from Feldman. The plaintiff and Mrs. Cheney testified to this effect, and plaintiff's stenographer supported it to the extent of testifying that Mrs. Cheney said Feldman could not have the car because he had misrepresented it. Feldman, called by defendant, gave no testimony positively denying it. The agreement, as it was finally signed, is as follows:

"Racine, Wis., January 3, 1918.

"This agreement by and between May Cheney of Milwaukee and M. Feldman, also of Milwaukee, is to the effect that if a certain agreement for the sale of lot 1, block 1, Ives, by said M. Feldman to one John Chovan is consummated and the said May Cheney receives in addition to a check of $375 and all account that the said M. Feldman has against the said May Cheney of any nature, and further $2,200 in cash and one Mitchell automobile, then the said May Cheney agrees to transfer to said M. Feldman the automobile that she receives as part payment for said lot 1, block 1, Ives, the receipt of payment for the automobile is hereby acknowledged if sale is consummated. If machine is not transferred to said Feldman the money paid must be refunded.                    MAY X CHENEY."

Feldman delivered his check for $375 to plaintiff as agent for Mrs. Cheney. There is evidence that plaintiff tendered it back before Feldman left his office but that the tender was refused. Plaintiff testified that he took the check to his bank to have inquiry made whether it was good, but that

through a misunderstanding the bank secured payment of it. It is indorsed in blank by plaintiff. Plaintiff testified that on at least two occasions since he has offered to return the money to Feldman but that his offers were rejected.

On January 4th Chovan paid the $2,200 cash and gave Mrs. Cheney a bill of sale of the automobile. Mrs. Cheney thereupon gave a bill of sale thereto to plaintiff, for which he paid $700. Chovan and plaintiff, with perhaps Feldman, went to defendant's garage, identified the machine, and plaintiff arranged with defendant's agents and president for the continued storage of the machine for plaintiff at the rate of $5 per month, plaintiff also agreeing to see that the charges against the car were paid.

On January 4th Feldman started suit against Mrs. Cheney for $400 damages upon contract and garnished the present defendant. The defendant's president, in the office of plaintiff's attorney, made an affidavit in answer to the garnishee summons to the effect that prior to the service of such summons it had been informed that the machine had been transferred from Chovan to Cheney, and from Cheney to the present plaintiff.

Thereafter, Feldman exhibited to defendant the contract with Mrs. Cheney, hereinbefore set forth, and the canceled check, paid the balance of the chattel mortgage debt and other charges against the car in the total sum of $186.62, and secured possession of the machine from defendant.

The trial judge, in a so-called decision signed by him, stated that the title to the automobile did not pass from May Cheney to Feldman January 3, 1918; that title did pass to plaintiff by bill of sale of January 4, 1918; that there was a valid contract of bailment between plaintiff and defendant known to its officers; that plaintiff is not chargeable with fraudulent conduct, active or constructive, and is not estopped from setting up his claim; and that defendant misconceived its duties and obligations in delivering the

automobile to Feldman.    The trial court found as facts
that defendant was engaged in the storage of automobiles;
that on or about January 4, 1918, the plaintiff was owner and
entitled to the possession of the automobile in question; that
on or about said date plaintiff made an agreement with de-
fendant whereby defendant agreed to store plaintiff's said
automobile for $5 per month; that defendant in violation of
said agreement delivered the automobile to Feldman instead
of to plaintiff; that Feldman was not the owner thereof nor
entitled to possession; and that the delivery to him was in
breach of the duty and obligation to plaintiff; and that the
value was $700.    Judgment was accordingly entered in favor
of plaintiff for $700 and costs.

For the appellant there was a brief by *Storms & Foley*,
attorneys, and *William W. Storms*, of counsel, all of Racine;
and the cause was argued orally by *William W. Storms*.

For the respondent there was a brief by *Simmons &
Walker* of Racine, and oral argument by *John B. Simmons*.

JONES, J.    It is claimed by the appellant that title to the
automobile passed to Feldman on January 3d by virtue of
the memorandum signed by Mrs. Cheney and payment of
$375; that the bill of sale to respondent on the next day
passed no title to him because Mrs. Cheney had no title to
convey; that there was no contract of bailment because he
had no title on that day; and that appellant delivered the
car to the true owner in good faith, and that the memo-
randum executed on January 3d and the canceled check
and the failure of respondent to show to appellant his bill of
sale afforded sufficient evidence to warrant the delivery.

The memorandum executed on January 3d is not a bill of
sale.    At that time Mrs. Cheney had no title to the car and
the document was only an executory contract to sell.    The
last clause, "if the machine is not transferred to said Feld-
man the money must be refunded," clearly shows that there

was not even an unconditional contract to sell the car. The oral testimony shows that this clause was regarded as important by Mrs. Cheney, and we construe it as a reservation on her part of the right to pay back the money and keep the car. In view of the testimony that she had been misled by Feldman as to the value of the car, and had been told that it was a Ford when in fact it was a Mitchell car, we cannot say that she was not justified in exercising the option she reserved. After acquiring title on the following day, her bill of sale to the plaintiff rescinded the agreement with Feldman so far as related to the car, and, as the trial court found, passed title to the respondent. *Shores L. Co. v. Claney,* 102 Wis. 235, 78 N. W. 451.

Counsel for appellant criticise the conduct of respondent and argue that since he drafted the memorandum and accepted the money from Feldman, being at the same time agent of Mrs. Cheney, he is estopped from claiming title to the car. Feldman is not a party to the suit, and it is difficult to see that any of these facts are available as an estoppel on behalf of appellant. Moreover, there is evidence that respondent had some reason to believe that Feldman had attempted to take advantage of Mrs. Cheney, for whom respondent was acting as agent. The testimony is quite susceptible of the construction that respondent in the whole transaction was seeking to protect his principal. The trial judge probably so believed, and in the decision found that plaintiff was not chargeable with fraudulent conduct and was not estopped.

The appellant may have acted in good faith in delivering the car to Feldman, but it certainly acted very rashly in so doing. There is a clear preponderance of proof that it knew that respondent claimed to be the owner of the car, and, as the trial court found, that it agreed as bailee to deliver it to respondent. It was not necessary in making this contract of bailment that respondent should produce and show to

appellant the evidence of his title, and no such evidence was called for. Since we hold that respondent was the owner of the car when the contract of bailment was made, it follows that appellant disregarded its contract in making delivery to Feldman, and it becomes unnecessary to discuss the question when delivery may be made by a bailee to a third person having paramount title.

*By the Court.*—Judgment affirmed.