POTOMAC INS. CO. v. NICKSON.

No. 4171.   Decided November 20, 1924.   (231 Pac. 445.)

1. LIVERY STABLE AND GARAGE KEEPERS—GARAGE KEEPER DELIVERING CAR STORED TO WRONG PERSON GUILTY OF CONVERSION. Where garage keeper, who stored automobile for hire, gave claim check therefor, and afterward delivered it to wrong person, he violated contract of bailment, and was guilty of conversion thereof, regardless of negligence.

2. BAILMENT—FAILURE TO DELIVER IS MERELY EVIDENCE OF CON-
VERSION, BUT MISDELIVERY IS CONVERSION.  Failure to deliver
bailed article is merely evidence of conversion, but misdelivery
is conversion in itself.

3. PLEADING—ALLEGATION OF MORE THAN NECESSARY HELD NOT TO
AFFECT RIGHT OF RECOVERY FOR MISDELIVERY OF BAILED AUTOMO-
BILE.  In action against keeper of garage for delivering car
stored for hire to another, where complaint stated good cause
of action in trover, mere fact that more than necessary was
alleged did not affect right of recovery.

4. ASSIGNMENTS—CAUSE OF ACTION AGAINST GARAGE KEEPER FOR
LOSS OF CAR STORED FOR HIRE, HELD ASSIGNABLE.  Cause of
action against garage keeper who stored car for hire, for de-
livering it to wrong person, is assignable.[1]

5. INSURANCE—INSURER ENTITLED TO RECOVER TO EXTENT OF RIGHT
OF ASSIGNOR.  Insurance company, assignee of right of owner
of automobile against keeper of garage who stored it for hire
and delivered it to wrong person, was entitled to recover to
extent of amount paid owner for damage to car while in
possession of thief.

6. INSURANCE—INSURANCE COMPANY, IF SUBROGATED TO RIGHTS OF
OWNER FOR DAMAGE TO CAR, ENTITLED TO RECOVER PAYMENT TO
OWNER FOR SUCH DAMAGE.  Insurance company, paying owner
of car damage to it by thief to whom keeper of garage with
whom it was stored for hire delivered it, if subrogated to
rights of owner, is entitled to recover amount paid owner for
such damage.

7. INSURANCE—FACT THAT INSURER OF CAR WAS LIABLE ONLY FOR
THEFT, HELD NOT TO AFFECT RIGHT TO RECOVER AGAINST KEEPER
OF GARAGE FOR MISDELIVERY OF CAR.  Fact that insurer, who
paid owner of car damages sustained while in hands of thief
to whom garage keeper had delivered it, was liable only for
theft, and not for misdelivery, does not affect right of insur-
ance company to recover against garage keeper, who was
protected against paying more than one claimant by assign-
ment of right of action by owner to insurer, and by fact that
insurer paid loss to owner and was subrogated to his rights.

[1] *Insurance Co.* v. *Railroad Co.*, 44 Utah, 26, 137 p. 653.

See (1) 25 Cyc. p. 1512 (2) 6 C. J. p. 1139 (1926 Anno.) (3) 31
Cyc. p. 68 (4) 5 C. J. p. 884 (5, 6, 7, 8) 28 Cyc. p. 50 (1926 Anno.).

---
Appeal from Second District
---

8. INSURANCE—DIRECTING VERDICT FOR INSURER OF CAR AGAINST
GARAGE KEEPER FOR MISDELIVERY OF CAR HELD PROPER. In ac-
tion against garage keeper by insurer who paid owner dam-
ages sustained by car while in hands of thief to whom it was
delivered by defendant with whom car had been stored, where
it was undisputed that defendant had delivered car to wrong
person, directing verdict for plaintiff for amount of damage
paid owner by plaintiff was not error.

Appeal from District Court, Second District, Weber
County; *George S. Barker,* Judge.

Action by the Potomac Insurance Company against J. W.
Nickson. From judgment for plaintiff, defendant appeals.

AFFIRMED.

*C. R. Hollingsworth* and *Jos. E. Evans,* both of Ogden, for
appellant.

*Pierce, Critchlow & Marr,* of Salt Lake City, for respond-
ent.

FRICK, J.

The Potomac Insurance Company, hereinafter called
plaintiff, commenced this action as the assignee of one W.
R. Wallace to recover judgment against the defendant who
conducted a public garage in Ogden City, Utah. W. R.
Wallace was a party to the action when it was commenced,
but during the course of the trial he was dismissed from
the action, and the trial proceeded with the insurance com-
pany as the sole plaintiff. Wallace is therefore eliminated
from the case.

The complaint contains many explanatory statements to-
gether with much unnecessary evidentiary and surplus mat-
ters. It must suffice to state that the plaintiff sought to
recover judgment against the defendant for the amount
that it was required to pay to W. R. Wallace under its con-
tract of insurance for the loss of an automobile which had

been left at the public garage of the defendant for safe-keeping, for hire, by the son of Wallace, and which the defendant delivered to one who intended to steal the car, as hereinafter more fully explained. In view that the car had been delivered to another the defendant was unable to deliver the car to Mr. Wallace, the owner, when he called for the same. The plaintiff had issued a policy of insurance to Wallace against theft, and had paid Wallace the sum of $900 as the damage done to the car by the thief while it was in his possession and before it was returned to Wallace. Mr. Wallace assigned his claim against the defendant for his failure to deliver the car to the plaintiff. The complaint, it seems, was based upon both the theory of assignment and of subrogation.

The answer of the defendant is also quite voluminous, stating in detail the whole transactions, and the reasons why the car was not delivered to Wallace when demanded. The excuse for nondelivery pleaded was that the defendant had delivered the car to one Claud Weibers, who had obtained possession of it from the defendant through deception, as hereinafter more fully stated. The case was tried to a jury upon substantially the foregoing issues, and, after the evidence was all in, the court directed the jury to return a verdict in favor of the plaintiff for a sum in excess of the amount which it had paid to Mr. Wallace upon the insurance policy. The excess was, however, remitted, and that feature is therefore eliminated from the case. The amount of the judgment as it was finally permitted to stand is for $900, that being the amount paid by plaintiff to Mr. Wallace as before stated.

The defendant appeals from the judgment, and assigns the ruling of the court in directing a verdict as the principal error.

The facts are not in dispute. Briefly stated, they are: On the 16th day of September, 1922, Henry A. Wallace, while driving his father's car to Ogden intended to drive to Logan, which is about 60 miles north of Ogden, on that evening. Wallace, however, stopped at Ogden for the night,

and placed the car in defendant's garage for safe-keeping and received what is called a "claim check" for the car. The next morning about 10:30 o'clock Mr. Wallace presented his claim or identifying check and demanded the car, when he was informed by an attendant in the garage that the car had been delivered to another man, who it later was made to appear, was Claud Weibers, who, the evidence disclosed obtained possession of the car in the following manner. He had visited the garage both the day before the 16th and again on the 16th of September. He went to the garage again on the night of the 16th immediately after the car in question had been left there by Wallace. Weibers, it appears, was familiar with the garage and the method of issuing claim or identification checks for stored automobiles. He accordingly slipped quietly into defendant's small office which he kept in the garage and took one or more blank claim checks. After having obtained the checks he filled out one in which he wrote the name of the car owner as J. R. Newton and wrote across the face "storage charges paid." He was aware of the fact that that part of the claim check which was retained by the defendant for identification was placed under the hood of the Wallace car. He therefore took that part of the check and substituted for it the one he had taken from the defendant's office, and in which he had designated the owner's name as J. R. Newton instead of Wallace's name. In the morning, after the night shift which had issued and delivered the claim check to Wallace had left the garage and the day shift had taken charge, he presented the claim check, and, when it was compared with the other portion which he had substituted under the hood of the car, the car was delivered to him without further question, and he went away with it, driving it to some town in Kansas where it was recovered by plaintiff and returned to Mr. Wallace. Weibers was convicted for stealing the car and at the time of trial was serving his sentence.

The following facts are therefore established beyond controversy: (1) That the defendant received the Wallace

car as a bailee for hire; (2) that it issued a claim or identification check to the car owner with at least the implied understanding or agreement that the car would be delivered to the owner or to his order upon the presentation and surrender of the claim check; (3) that Weibers obtained the car by means of deception and forgery and in such a manner as constitutes grand larceny in this jurisdiction; and (4) that the only excuse the defendant offered for his failure to deliver the car to Wallace, the owner, when demand was made for it, was that he had been tricked and deceived and by reason thereof had delivered the car to another. The question therefore arises, Did the district court err in directing a verdict for the plaintiff and in refusing to submit the question of defendant's negligence to the jury?

Defendant's counsel contend that a bailee for hire may always offer the excuse that the property left in his charge was stolen without his connivance or negligence, and that the question respecting his conduct, and especially with respect to his negligence, is a question of fact for the jury. Upon the other hand, plaintiff's counsel insist that in case property is deposited or stored with a bailee and he delivers the same to another he is liable, regardless of whether he was guilty of negligence or not. They further contend that under the facts of this case the question of defendant's motives or good faith is not involved.

We shall first consider plaintiff's contentions. The question regarding the liability of bailees for hire has very frequently come before the courts. One of the leading cases in which the law is clearly stated is the case of *Hall* v. *Boston, etc., Rd. Co.*, 14 Allen (Mass.) 439, 92 Am. Dec. 783. In the course of the opinion in that case, after discussing other questions, the court said:

"The remaining question is, Are the defendants liable for a conversion of the property? It is insisted on their behalf that this depends upon the amount of care they were bound to exercise, and the degree of negligence of which they were guilty. But this is an erroneous view of the law. A misdelivery of property by any bailee to a person unauthorized by the true owner is of itself a conversion rendering the bailee liable in trover without regard to the

question of due care or degree 'of negligence. This is a well established legal principle, applicable to every description of bailment. The action of trover is not maintained by proof of negligence, but only of misfeasance amounting to a conversion. And a delivery to an unauthorized person is as much a conversion as would be a sale of the property, or an appropriation of it to the bailee's own use. In such cases neither a sincere and apparently well founded belief that the tortious act was right, nor the exercise of any degree of care, constitutes a defense even to a gratuitous bailee. *Lichtenheim* v. *Boston & Providence Rd.*, 11 Cush. 70, *Polley* v. *Lenox Iron Works*, 2 Allen, 182. *Lawrence* v. *Simons*, 4 Barb. 354. *Esmay* v. *Fanning*, 9 Barb. 176. The question whether the defendants were warehousemen bound to exercise ordinary care, or gratuitous bailees liable only for gross negligence, is therefore wholly immaterial."

The foregoing statement of the law is approved in *Jenkins* v. *Bacon*, 111 Mass. 373, 15 Am. Rep. 33, and again in *Murray* v. *Postal Tel. & C. Co.*, 210 Mass. 188, 96 N. E. 316, Ann. Cas. 1912C, 1183. The doctrine of the Massachusetts cases is followed by the Supreme Court of Michigan in *Hubbell* v. *Blandy*, 87 Mich. 209, 49 N. W. 502, 24 Am. St. Rep. 154.

In *Esmay* v. *Fanning*, 9 Barb. (N. Y.) 176, the question of a bailee's liability for the misdelivery of property deposited with him was before the court. In discussing that question the court, at page 188, says:

"The question, therefore, becomes narrowed down to this: Whether a bailee of a chattel is answerable in trover, on showing a delivery to a person not authorized to receive it. In *Devereux* v. *Barclay*, (2 Barn. & Ald. 702.) it was held that trover will lie for the misdelivery of goods by a warehouseman, although such misdelivery was occasioned by mistake only—and this court, in *Packard* v. *Getman*, (4 Wend. 613,) held that the same action would lie against a common carrier, who had delivered the goods, by mistake, to the wrong person. The same point was ruled by Lord Kenyon in *Youl* v. *Harbottle*. (Peake's N. P. Cases, 49,) and by the English Common Pleas in *Stephenson* v. *Kent*, (4 Bing. 476). If trover will lie against a common carrier or a warehouseman for a misdelivery, it can, under the like circumstances, be sustained against a bailee for hire, or a gratuitous bailee. It results from the very obligation of his contract, that if he fails to restore the article to the rightful owner, but delivers it to another person, not entitled to receive it, he is guilty of a conversion. (Story on Bail. § 414.)"

The same doctrine is announced in the case of *Cohen* v. *Koster*, 60 Misc. Rep. 65, 111 N. Y. S. 673. In that case it is held:

"Though the owner of a stable posted a sign therein that he would not be responsible for goods left in trucks in the stable, he was liable for conversion of merchandise left in a truck, where he delivered the same to a stranger."

In *Darling* v. *Purdom*, 14 Ga. App. 597, 598, 81 S. E. 800, at page 801, the court, in passing upon the question of the liability of a bailee for misdelivery of property left in his care, says:

"It appears that the defendant failed to hold the property as he promised to do for the estate, but turned it over to one not authorized by the administrator to receive it. When the defendant did this he subjected himself to liability for the loss occasioned by a breach of the contract."

The same doctrine is announced in *Kowing* v. *Manley*, 49 N. Y. 192, 10 Am. Rep. 346. In *Rowlands* v. *Electrical Const. Co.*, 174 Wis. 165, 182 N. W. 736, the rule laid down in the Massachusetts cases for misdelivery of property by a bailee is followed. In *Murray* v. *Farmers' & Merchants' Bank* (Mo. App. 206 S. W. 577, the liability of a bailee of a note for having delivered it to one not the pledgor was before the court. The court held:

"Where bailee delivers the property deposited to person other than bailor, he determines the right of such person to the bailment at his peril, and is liable for wrongful delivery, regardless of negligence."

In *Doyle* v. *Peerless Motor Car Co.*, 226 Mass. 561, 116 N. E. 257, the question respecting the liability of a garage company for delivering a car to one not the owner was again before the Massachusetts Supreme Judicial Court. The court quotes and reaffirms the doctrine stated in *Hall* v. *Boston, etc., Rd. Co.*, supra. In *McLain* v. *West Virginia Automobile Co.*, 72 W. Va. 738, 79 S. E. 731, 48 L. R. A. (N. S.) 561, Ann. Cas. 1915D, 956, in speaking of the duty of garage keepers, the court said: ''The only surrender of a car that the garage keeper can rightfully make is on the order of the owner, expressed or reasonably implied.''

In 3 R. C. L. § 38, p. 116, the author of the article on

Bailments, after stating the law applicable to bailees, and the circumstances under which they may offer excuses for the nondelivery of property entrusted to their care in case of theft and other misadventures occurring without their fault, says:

"But it must be borne in mind that a misdelivery by a bailee, though he acts in good faith and may be said to be without fault, furnishes no legal excuse for a failure to make a return, as such an act is a departure from the terms of the bailment contract, and so makes the bailee liable therefor, irrespective of negligence."

We have quoted the foregoing excerpts from the decisions in order to show the precise theory upon which the courts proceed in cases of misdelivery of property by a bailee. We shall now proceed to consider the cases cited and relied on by defendant's counsel.

Among other cases they refer to the following: *Claflin* v. *Meyer,* 75 N. Y. 260, 31 Am. Rep. 467; *Firestone Tire & R. Co.* v. *Pac. Transfer Co.,* 120 Wash. 665, 208 P. 55, 26 A. L. R. 217; *Colburn* v. *Washington State Art. Ass'n,* 80 Wash. 662, 141 P. 1153, L. R. A. 1915A, 594; *Glende* v. *Spraner,* 198 Ill. App. 584; *Farrall* v. *Garage Co.,* 179 N. C. 389, 102 S. E. 617; *Knights* v. *Piella,* 111 Mich. 9, 69 N. W. 92, 66 Am. St. Rep. 375; *Wilson* v. *Christal,* 187 App. Div. 660, 176 N. Y. S. 341; *Mills* v. *Gilbreth,* 47 Me. 320, 74 Am. Dec. 487; 3 R. C. L. p. 151. It is not necessary to cite more of the cases since the foregoing are ample to illustrate the principle of law upon which those cases are based. A mere cursory examination of those cases discloses that the question of the misdelivery of the property by the bailee was not involved. In those cases the property was either stolen or was lost in some other misadventure without any affirmative act on the part of the bailee such as a delivery to the wrong person, and therefore it is held that the question of whether the bailee was negligent in bringing about the loss or in not preventing it was a question of fact for the jury. In this connection it must be remembered that the relation of bailor and bailee is created by contract.

In the instant case when the defendant received the Wallace car and issued his claim check, he, by virtue of that act, agreed to redeliver the car to the owner or to his order, and to no one else. To do that was just as much a part of the contract of bailment as if it had been solemnly written out and signed by both parties. In delivering the car to Weibers, therefore, the defendant breached his contract, and hence the law does not inquire whether he did so in good faith or through negligence or otherwise. In a case like the one at bar, all that the bailor is required to show is that the bailee has breached his contract by delivering the subject of the bailment to another without the consent of the bailor. Misdelivery, therefore, clearly distinguishes the case at bar from a case where the property is stolen or is lost through some other misadventure. In a case of misdelivery, that act, in and of itself, amounts to a conversion of the property held; while the stealing of property intrusted to the bailee may or may not constitute conversion, depending upon his conduct and freedom from negligence.

It is a well-recognized principle that a failure to deliver is merely evidence of conversion. Whether there is a conversion, therefore, depends upon the facts. The cases cited are therefore in perfect harmony although at first blush it may seem that in all cases where the bailee is deceived or tricked into delivering the property he should be excused unless he was guilty of negligence in making the delivery. Such, however, is not the law.

In view of the foregoing, the question of burden of proof is not involved and we express no opinion with respect thereto.

Nor is the fact that the plaintiff in its complaint stated the history of the whole transaction, including the theft of the car by Weibers, material here. The complaint stated a good cause of action in trover, and the mere fact that more was alleged than was necessary does not affect plaintiff's right of recovery.

Nor is it material to consider whether plaintiff's right of recovery is based upon its right as an assignee of Wallace

or upon its right of subrogation. In this jurisdiction the cause of action in favor of Wallace and against the defendant was assignable. *Insurance Co.* v. *Railroad Co.*, 44 Utah, 26, 137 P. 653. As the assignee of Wallace, plaintiff stood in his shoes, and could recover at least to the extent it was permitted to recover. The same result follows if plaintiff recovers by right of subrogation. The rule in that regard is very tersely and correctly stated in 37 Cyc. 391, in the following words:

"A person liable for and who has paid for a loss or injury caused by fault of another is subrogated to the rights of the injured party against the wrongdoer."

Plaintiff was liable to Wallace, and paid the loss and damage he sustained by reason of the defendant's breach of duty, that is, by reason of his wrongful delivery of the car to Weibers. Nor is it controlling that the plaintiff was liable only in case of theft and not for misdelivery. That was the effect of the contract as between the plaintiff and Wallace. With that the defendant is not concerned except that he has a right to be protected against paying the loss to more than one claimant. As to that he is fully protected both by the proof of the assignment by Wallace to the plaintiff and also by the fact that plaintiff paid the loss to Wallace and was subrogated to his rights as against the defendant.

It necessarily follows, therefore, that in view of the undisputed facts in this case the district court committed no error in directing the jury to return a verdict in favor of plaintiff for the amount it was required to pay Wallace as damages to his car while it was in the possession of Weibers. Whether the plaintiff was entitled to recover its costs and expenses in returning the car, as against the defendant, is not involved on this appeal, and as to that we express no opinion.

The judgment is affirmed, with costs.

WEBER, C. J., GIDEON and CHERRY, JJ., and DILWORTH WOOLLEY, District Judge, concur.

THURMAN, J., did not participate herein.