This is an appeal from a judgment in favor of defendant in an action for conversion of an automobile. The plaintiff is an insurance company, which, after the alleged conversion, paid to Floyd Kinchelow, the owner of the car, the value of the car, under a theft policy issued by it to Floyd Kinchelow. It then brought this suit as subrogee of Kinchelow. Defendant maintains a garage for the storage and *Page 837 
parking of automobiles. The conversion alleged was the delivery by defendant of the automobile to one not authorized by Kinchelow to receive it. The jury returned a verdict for defendant, and, on this appeal, the issue is whether the Court erred in refusing plaintiff's request for a directed verdict.
Union Market Garage is located in the city of St. Louis. It occupies the three upper floors of the four-story Union Market building. Access to the garage is by means of a ramp from the ground level to the second floor of the building, which is the first floor of the garage. About 40 feet from the head of the ramp is a cashier's cage. Upon entering the garage, one must pass this cage, and, after paying the parking charge, is given a receipt. On this receipt, which is ejected from a cash register operated by the cashier, are printed the date, the number of the receipt, the time of arrival, the license number of the car being parked, a letter of the alphabet indicating the cashier on duty at the time, the amount of the storage charge, and the name and location of the garage. The customer, after receiving such a receipt, parks his car on one of the floors of the garage as directed by the cashier. On each floor of the garage are attendants, who assist and direct the parking of cars on their particular floors. A customer who has parked his car, when desiring to secure same, takes an elevator to the floor on which the car is parked, gets the car himself, and drives it to the cashier's cage. He surrenders the receipt for the car to the cashier, who compares the license number recorded on the receipt with the license number on the car. If the two correspond, the customer is allowed to proceed down the ramp and out of the garage.
Floyd Kinchelow, the owner of the car in question, testified for plaintiff. He stated that on December 19, 1945, he drove his car into the garage about 8 a.m. for the purpose of parking it for the day. He paid the cashier 35 ¢, the parking charge, and the cashier gave him a receipt. He then drove the car to the fourth floor, which was the third floor of the garage, and at the direction of the attendants left the car in one of the aisles. The attendant then said something about cleaning the ice off of the windshield of the car, to which Kinchelow replied that he would bring him a drink. The attendant then said to bring him a package of cigarettes. Kinchelow had a package of cigarettes with him, and he handed it to the attendant. He further testified that he either handed the receipt to the attendant with the cigarettes or dropped it. He then left the garage for his place of business.
About noon of that same day, Nathan Jackson, the attendant on the third floor of the garage, noticed a man in a soldier's uniform on his floor. Jackson approached this man and asked him if he was looking for his car. The soldier replied that he was looking for a car that his brother had brought in the night before. The attendant told him he would have to look on the second floor for it.
Elwood Lants, the cashier on duty at the time, testified that a soldier came up to him, and said that his brother had parked his car there that morning and that he did not know on which floor it was parked. Lants asked him what kind of a car it was, and the soldier described it to him. At the time the soldier was in possession of the claim check theretofore issued to Kinchelow and the keys to Kinchelow's car. He gave the claim check and keys to Lants. With the keys was a small war veteran's key containing the license number, which compared to the license number on the claim check. Lants compared these numbers, and then called Curtis Ray, the second floor attendant, giving him the keys and directing him to help the soldier find the car. Ray went with the soldier to the second floor, and upon arrival there the soldier went straight to the Kinchelow car. Both got into the car and the soldier drove it down to the cashier's cage on the first floor. When they got to the cashier's cage, the soldier got out of the car and handed the claim check to Lants, the cashier. Lants then checked the license number on the claim check against the license number on the car. The numbers checked, and the soldier was permitted to drive the car down the ramp and out of the garage.
Thereafter Curtis Ray told Lants how the soldier had gone straight to the car, and *Page 838 
Nathan Jackson told him about a soldier being on his floor hunting for a 1940 Chevrolet. This made Lants suspicious, and he and Mr. Foltyn, the manager, had a conversation about it. The manager then directed Lants to ascertain the name of the owner of the car from a license book which they had. The book showed that the car belonged to Kinchelow. Foltyn then phoned Kinchelow and asked if he had sent anyone to the garage for his car. Kinchelow said he had not. They then notified the police, but the car was never recovered.
Kinchelow testified that he had not authorized anyone to get his automobile for him on the day in question.
It was admitted that Floyd Kinchelow was the owner of a 1940 model Chevrolet sedan on December 19, 1945, and that on that date there was in full force and effect a policy of insurance whereby plaintiff insured Floyd Kinchelow against theft of the automobile, and that prior to the filing of this suit the plaintiff, in compliance with the terms of the policy, paid Floyd Kinchelow $732.20 in satisfaction of plaintiff's liability under the policy for loss to Floyd Kinchelow of said automobile.
Plaintiff's petition was in two counts. Count One alleged that on December 19, 1945, Floyd Kinchelow delivered his 1940 model Chevrolet sedan to the defendant to be stored for hire; that thereafter, on the same date, the defendant converted said automobile to its own use, to the damage of Floyd Kinchelow in the sum of $732.20; that plaintiff had insured Floyd Kinchelow against theft of said automobile, and under the terms of the policy, paid him the amount of his loss, and became subrogated to all of the rights of Floyd Kinchelow against the defendant for the recovery of that sum. Count Two of the petition was based on the theory that defendant breached its duty to exercise ordinary care as a bailee of the automobile. At the close of the case, plaintiff elected to go to the jury on Count One of the petition.
Defendant's answer admitted that it was engaged in the business of storing and garaging automobiles for hire, and denied each and every other allegation of the petition. The answer further alleged that an automobile of the type and description mentioned in plaintiff's petition was delivered to defendant's place of business for storage by someone unknown to defendant; that when the automobile arrived at defendant's garage, the operator of the automobile was issued a claim check or receipt for same for the purpose of identifying said automobile when it was to be called for and removed from defendant's garage; that thereafter and on the same day that said automobile was delivered to defendant's garage, the claim check or receipt for said automobile so issued by defendant to the operator thereof was presented and surrendered to defendant, and the automobile was thereupon removed from defendant's garage by the person who had possession of and who surrendered said claim check to defendant.
Appellant contends that under the law and the evidence it was entitled to a directed verdict in this case. The answer to this contention, of course, depends upon whether there was any issue of fact to be submitted to the jury.
[1] The law applicable is well settled. It is well stated in 6 Am.Jur. p. 299, Sec. 211, as follows:
"It is the uniform rule, supported by the settled weight of authority, that a delivery of bailed property by the bailee to one not the true owner and not authorized by the bailor to receive it is, of itself, a conversion and a breach of the contract of bailment for which the law imposes an absolute liability upon the bailee for loss or damage occasioned thereby, irrespective of the fact that he may have acted in good faith and without negligence, and even though the misdelivery was the result of innocent mistake or was induced by fraud or trick."
See also Murray v. Farmers' Merchants' Bank, Mo.App., 206 S.W. 577; Potomac Ins. Co. v. Nickson, 64 Utah 395, 231 P. 445, 42 A.L.R. 128; Central Meat Market v. Longwell's Transfer, Inc., Tex. Com.App.,62 S.W.2d 87.
[2] There can be no doubt that plaintiff made out a prima facie case for the jury. But, was there such a case presented by the evidence that called for a directed verdict? *Page 839 
We believe not, because the truth of plaintiff's evidence was for the jury.
[3] It is true that Kinchelow testified that he did not authorize anyone to receive his automobile from the defendant on the day in question. But, defendant never admitted this fact. The evidence showed that the person who obtained the automobile was in possession of the receipt or claim check, and also was in possession of the keys to the automobile. The jury might not have believed Kinchelow's testimony, and under the law we have no right to interfere. The rule applicable is stated in Cluck v-Abe, 328 Mo. 81; 40 S.W.2d 558, 559, as follows:
"In a case where the allegations of the petition are denied by the answer, and the plaintiff offers oral evidence tending to support the allegations of the petition, the defendant is entitled to have the jury pass upon the credibility of such evidence even though he should offer no evidence himself. The court has no right to tell the jury that it must believe the witnesses. The jury, in the first instance, is the sole judge of the credibility of the witnesses and of the weight and value of their evidence, and may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence be uncontradicted and unimpeached."
See also State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S.W.2d 462; Coleman v. Jackson County, 349 Mo. 255, 160 S.W.2d. 691; Baker v. Swearengin, 351 Mo. 1027, 174 S.W.2d 823; Dalton v. City of Poplar Bluff, 173 Mo. 39, 72 S.W. 1068; Finch v. Heeb, 231 Mo.App. 591,107 S.W.2d 962.
But, respondent says the rule is not applicable where the defendant's statements and attitude during the progress of the trial indicate that it did not seriously dispute the existence of the facts essential to plaintiff's recovery.
[4] We recognize the existence of such a rule, but do not believe it applicable in the case at bar. There was no admission in defendant's pleadings of the facts necessary to plaintiff's case. On the contrary, those facts were denied. There were no admissions in open court of any of those facts, and no admissions by any of the defendant's witnesses of the truth of the facts necessary for a recovery by plaintiff. Looking at the record in this case, we are unable to say that defendant's statements and attitude during the trial indicated that it did not seriously dispute the facts essential to plaintiff's recovery. On the contrary, its attitude seemed to call for strict proof by plaintiff of its case.
Holding these views, there is nothing for us to do but affirm the judgment.
The judgment appealed from is affirmed.
McCULLEN, P. J., and HUGHES, J., concur.
 *Page 931