Argued March 16; reversed and remanded June 1, 1949

# NATIONAL FIRE INS. CO. *v.* MOGAN ET AL.

206 P. 2d 963

*John L. Luvaas,* of Eugene, and *Robert Clapperton,* of Portland, argued the cause for the appellant. With them on the brief were Clapperton & Schallhorn, of Portland.

*David B. Evans* and *Sidney A. Milligan,* of Eugene, argued the cause for respondents. With them on the brief was E. O. Immel, of Eugene.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, KELLY and BAILEY, JJ.

LUSK, C. J.

The ultimate question on this appeal is whether an insurance company, which issued a policy of fire insurance covering a certain chattel which was destroyed by fire while in the exclusive possession of a bailee of the insured and paid the loss, is subrogated to the rights of the insured as bailor against the bailee. A preliminary question is whether the record before us discloses a right in the bailor to recover from the bailee on account of the destruction of the property.

The case comes here as an appeal by the plaintiff from a judgment on the pleadings granted by the Circuit Court in favor of the defendants, on motion of the latter.

The complaint alleges the following: On March 18, 1946, the plaintiff, National Fire Insurance Company, issued a policy of insurance in the sum of $310,000.00 to McNutt Bros. insuring them against loss or damage by fire to various articles of equipment including a certain air compressor. On May 23, 1946, McNutt Bros. rented the air compressor to the defendants Mogan, a partnership engaged in the sawmill business at Eugene, Oregon, under the name of Mogan Lumber Company, "and Defendants then and there assumed exclusive care, custody, control and possession thereof."

"Said defendants have failed and refused to return said property to McNutt Bros. the owners thereof, but have informed McNutt Bros. that the property was destroyed by fire." The reasonable value of the property at the time of its delivery by McNutt Bros. to the defendants was $3,000.00. "That Plaintiff's insured, McNutt Bros., upon being informed of the loss of said property while in the custody of said Defendants and within the time provided in the policy hereinbefore referred to, furnished to the Plaintiff due proof of loss so caused to said insured by said fire; that thereafter and prior to the commencement of this action Plaintiff caused investigation to be made for the purpose of determining the amount of its liability to said insured by reason of said fire, and determined that the total of such liability was the value of said property, to-wit: $3,000.00." Thereafter the plaintiff paid McNutt Bros. $3,000.00 in full satisfaction of its liability under said policy of insurance and "by the terms of said policy, became and was subrogated to all the rights and claims of said insured against said Defendants to the extent of said payment so made by Plaintiff, and Plaintiff alleges that ever since such payment it has been and now is the holder and owner of the rights and claims to which it was so subrogated as aforesaid." "That prior to the commencement of this action, Plaintiff and its insured, McNutt Bros., demanded from the Defendants that said Defendants re-deliver to McNutt Bros. said property in the same condition in which it was delivered by McNutt Bros. to said Defendants, or the reasonable value thereof, to-wit: the sum of $3,000.00; but Defendants have failed and refused and still fail and refuse to re-deliver said property or any part thereof, or to pay said sum of money or any part thereof."

The prayer is for judgment against the defendants in the sum of $3,000.00.

The defendants by their answer admit that "the property described in Plaintiff's Complaint was destroyed by fire"; but otherwise they deny all the allegations of the complaint except the formal allegations as to the incorporation of the plaintiff and the partnership status of the defendants.

The defendants' motion for judgment on the pleadings was submitted after a jury had been selected and sworn, and was based on the ground that "the plaintiff has not stated a cause of action against the defendants or either of them".

■ *First.* The complaint sufficiently shows that the defendants were bailees for hire of the air compressor. *Willamette Tug & Barge Co. v. Commercial Dispatching Corp.,* 180 Or. 657, 178 P. (2d) 698; *Western Transportation Co. v. Commercial Dispatching Corp.,* 180 Or. 665, 178 P. (2d) 702. The terms of the contract of bailment are not stated, other than that McNutt Bros. rented the property to the defendants, who were in the exclusive possession and control of it at the time of its destruction by fire. It is fairly inferable, nevertheless, from the allegations of the pleading that the contract was breached by the defendants' failure and refusal to return the property.

■ As bailee it was the duty of the defendants to return the compressor to the bailors in good condition, and for their failure to do so they would be liable to respond in damages to the bailor unless such failure was excused as not being due to the fault or want of care of the bailees. *Commercial Dispatching Corp. cases,* supra; *Hansen v. Oregon-Wash. R. & N. Co.,* 97 Or. 190, 188 P. 963, 191 P. 655.

■ The bailors had a choice of remedies. They might either have maintained an action of assumpsit for breach of the contract or sued in tort charging negligence. When the action is for breach of the contract it is sufficient to allege the bailment and failure of the bailee to return the property. And upon proof of these facts a presumption of negligence on the part of the bailee arises. See the cases above cited. We construe the complaint here to be in assumpsit for breach of the contract of bailment. That is what plaintiff's counsel claim for it, it is susceptible to that construction, and as it is to be considered in the face of a motion for a judgment on the pleadings we are not to give it a construction unfavorable to the pleader. See, *Lytle v. Payette-Oregon Irr. Dist.*, 175 Or. 276, 293, 152 P. (2d) 934, 156 A. L. R. 894.

It is said, however, that the complaint itself negatives the implication of negligence and therefore fails to state a cause of action because of the allegation that the bailed property was destroyed by fire. This proposition has the support of a dictum in the Hansen case (97 Or. at p. 214), and, according to text writers, the weight of authority appears to support the rule that no inference or presumption of a bailee's negligence arises as a matter of law from the mere fact that the property, while in his possession, was destroyed by fire or stolen. 6 Am. Jur., Bailments, 451, § 372; 8 C. J. S., Bailments, 348, § 50. In accordance with this rule it has been held that where the plaintiff's complaint shows that the failure to return the subject of a bailment is the result of its destruction by fire or its loss by theft the complaint does not state a cause of action unless it goes further and charges the fire or theft to the negligence or other fault of the bailee. *Smith v. Noe,* 159 Tenn. 498, 19 S. W. (2d) 245; *Lan-*

*caster Mills v. Merchants' Cotton-Press Co.,* 89 Tenn. 1, 31-32, 14 S. W. 317, 24 Am. St. Rep. 586; *Galowitz v. Magner,* 203 N. Y. S. 421, 208 App. Div. 6. See, 6 Am. Jur., Bailments, 437, § 357.

Apart from the dictum in the Hansen case above referred to this court has never expressed itself on the question and is at liberty to determine it unembarrassed by precedents in its own decisions.

From an instructive review of the history of the law of bailments in *Sumsion v. Streator-Smith, Inc.,* 103 Utah 44, 132 P. (2d) 680, we learn that in ancient times the obligation of the bailee to the bailor was absolute and that it was not until the end of the seventeenth century that "the concept of 'no liability without fault' had infiltrated into bailment law and had become an essential part of the plaintiff's case." With this development of a more liberal rule in favor of the bailee there grew up the doctrine adhered to by most of the courts of this country that a mere showing that the bailed property was destroyed or damaged by fire or was stolen suffices to rebut the implication of negligence on the part of the bailee. Among the modern decisions, however, "an increasing number of authorities are found in support of the proposition that the bailor makes out his prima facie case notwithstanding he shows that the loss or damage occurred by reason of fire or theft, on the theory that such occurrence, while consistent with freedom from negligence on the bailee's part, may be equally consistent with negligence, is out of the ordinary course of events, does not excuse the bailee's failure to perform his contract unless in fact he exercised due care, is explainable, if at all, by facts peculiarly within the knowledge of the bailee, and should be sufficient evidence, where unexplained, to carry the case to the jury on the issue of negligence

even where the bailor has the ultimate burden of proof on that issue." 6 Am. Jur., Bailments, 452, § 372. See, also, idem., 459, § 379, where it is said that this seems "a sound doctrine" amounting to "no more than a just requirement of disclosure on the part of the bailee affirmatively to overcome the presumption of negligence raised against him by the bailor's proof." And, see, 8 C. J. S., Bailments, 349, § 50 c. The cases illustrating the opposing views are collated in the following annotations: Where the subject of bailment is destroyed by fire: 151 A. L. R. 716, 71 A. L. R. 773, 9 A. L. R. 559; where the subject of bailment is stolen: 48 A. L. R. 387, 388, 26 A. L. R. 232-237.

It will be found from an examination of the decisions that even in jurisdictions where the rule is recognized that no presumption of negligence arises from the mere fact of the destruction of the subject of bailment by fire the circumstances may be such as to cast upon the defendant the duty of absolving himself from fault. See, e. g., *Royal Insurance Co. v. Collard Motors,* (1938) (La. App.) 179 So. 108; *Walters v. Adams Transfer and Storage Co.,* (1940) 235 Mo. App. 713, 141 S. W. (2d) 205. We are not, of course, concerned with such a case. We have here the naked fact alleged by the complaint and admitted by the answer that the air compressor was destroyed by fire while in the possession of the defendants, with no information concerning the circumstances of the fire; and the question is simply whether the plaintiff, who has not alleged negligence but relies for recovery merely on a breach of the contract of bailment, has the burden of showing in the first instance that the fire, with the consequent destruction of the property, was due to the defendants' negligence.

The reason given for the majority rule is, as variously stated, that "fire is ordinarily regarded as beyond the bailee's control", *Metropolitan Electric Service Co. v. Walker,* (1924) 102 Okla. 102, 226 P. 1042; or that "fire does not necessarily speak of negligence in its origin", *Penn. R. Co. v. Dennis,* (1925) 231 Mich. 367, 204 N. W. 89. See, 71 A. L. R. 773. These things may be true, but it is also true that "It is common knowledge that fires may and often do result from negligence and that property in the custody of a bailee may be damaged or consumed by fire caused by the negligence of the bailee, as well as by theft or other negligence." *Threlkeld v. Ballard,* (1944) 296 Ky. 344, 177 S. W. (2d) 157, 151 A. L. R. 708. The view of the courts supporting the minority rule is that the bailee, being in exclusive possession of the chattel, is in a far better position to explain the origin of the fire and to produce evidence of the circumstances which would determine whether or not it was due to his negligence, than the bailor. We think there is a good deal of truth in this observation of the South Carolina court in *Fleischmann, Morris & Co. v. Southern Ry. Co.,* 76 S. C. 237, 56 S. E. 974, 9 L. R. A. (N. S.) 519:

> "* * * In most cases, to require the owner to assume the burden of showing that the fire or theft was due to the lack of ordinary care, is to impose an impossible task and place him more than ever at the mercy of the warehouseman."

■ Professor Wigmore says with respect to the question of determining where the burden of proof should be placed that there is no "general solvent for all cases", that "It is merely a question of policy and fairness based on experience in different situations." 9 Wigmore on Evidence (3d ed.) 275, § 2486. We are not here dealing with a question of the true burden of

proof. It is only necessary to determine now whether the complaint states a cause of action, so that if its allegations were proved an inference or presumption of negligence would arise casting upon the defendants the burden at least of going forward with the evidence to meet the prima facie case. The statement of Wigmore is applicable to that situation as well as to the true burden of proof. Considerations of "policy and fairness" would seem to us to lead to the conclusion that not the bailor but the bailee should be charged with the duty in the first instance of explaining the origin of a fire which consumed property in the latter's exclusive possession. Some of the decisions which take this view are cited in the margin.*

There is a further reason for so holding which is not without weight. Section 8 of the Uniform Warehouse Receipts Act (§ 60-208, O. C. L. A.) provides in part:

> "In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

■ Most courts which have construed this provision hold that it applies to cases where the subject of the bailment has been damaged or destroyed by fire and support their conclusion by reasoning like that advanced by those courts which adhere to the minority rule where no statute is involved. See *Berkowitz v. Pierce*, (1943) 129 N. J. L. 299, 29 Atl. (2d) 552; *Leckie*

---

* Beck v. Wilkins-Ricks Co., (1920) 179 N. C. 231, 102 S. E. 313, 9 A. L. R. 554; Fleischmann, Morris & Co. v. Southern Ry. Co., supra; Afflerbaugh v. George Grede Co., (1923) 182 Wis. 217, 196 N. W. 224; Hobbie v. Ryan, (1927) 130 Misc. 221, 223 N. Y. S. 654; Clemenson v. Whitney, (1925) 238 Ill. App. 308 (a case involving theft and overruling prior decisions); Employers' Fire Insurance Co. v. Consolidated Garage and Sales Co., (1927) 85 Ind. App. 674, 155 N. E. 533; Glazer v. Hook, (1920) 74 Ind. App. 497, 129 N. E. 249; Threlkeld v. Ballard, supra. See, also, Rustad v. Great Northern Ry. Co., 122 Minn. 453, 142 N. W. 727.

*v. Clemens,* (1919) 135 Md. 264, 108 Atl. 684, 686; *Wilson v. Crown Transfer & Storage Co.,* (1927) 201 Cal. 701, 258 P. 596; *U Drive & Tour v. System Auto Parks,* (1937) 28 Cal. App. (2d) 782, 71 P. (2d) 354. In the absence of some very compelling reason for taking a different course, the courts should avoid the incongruity of one rule for bailees subject to the Warehouse Receipts Act and a different rule for other bailees.

■ We are of the opinion, therefore, that the complaint under consideration states a cause of action, provided the plaintiff insurance company is fully subrogated to the rights and remedies of McNutt Bros., the bailors, arising out of the breach of the contract of bailment. To that question we now turn our attention.

■ *Second.* It is established law that an insurance company paying a fire loss is subrogated to all the rights and remedies of the insured against the parties whose wrongful act is responsible for the loss. *American Central Insurance Co. v. Weller,* 106 Or. 494, 501, 212 P. 803; *Milwaukee Mechanics' Ins. Co. v. Ramsey,* 76 Or. 570, 573, 149 P. 542, L. R. A. 1916A 556, Ann. Cas. 1917B 1132; *Fireman's Ins. Co. v. Oregon Railroad Co.,* 45 Or. 53, 62, 76 P. 1075, 67 L. R. A. 161; *Home Mutual Ins. Co. v. O. R. & N. Co.,* 20 Or. 569, 572, 26 P. 857, 23 Am. St. Rep. 151. Defendants concede that the plaintiff company would be subrogated to the rights of its insured against a third party wrongdoer who might be legally responsible for the destruction of the air compressor by reason of negligence; but they say that there is no allegation of negligence on the part of the defendants in connection with the fire, and that the plaintiff is attempting to recover for a breach of the contract of bailment. To such a right, it is asserted, the plaintiff is not subrogated.

Under the English authorities, which have been

followed by some of the courts of this country, the insurer, it would seem, is entitled to the benefits of any contract rights of the insured by the enforcement of which the loss to the insured would be diminished— at least where the contract of insurance and the contract with a third party covered identically the same subject matter. *Castellain v. Preston,* L. R. 11 Q. B. D. (1882-83) 380; *Darrell v. Tibbitts,* L. R. 5 Q. B. D. (1879-1881) 560. (For comment on these cases see Vance on Insurance (2d ed.) 671, 672.) The theory of the English rule is that a contract of fire insurance is a contract of indemnity and that "this contract means that the assured, in case of a loss against which the policy has been made, shall be fully indemnified, but shall never be more than fully indemnified." (Brett, L. J., in *Castellain v. Preston,* supra, at p. 386.) Subrogation is said by the same learned judge in his opinion in that case to be "a doctrine in favour of the underwriters or insurers in order to prevent the assured from recovering more than a full indemnity; it has been adopted solely for that reason." Hence it is laid down that "as between the underwriter and the assured the underwriter is entitled to the advantage of every right of the assured, whether such right consists in contract, fulfilled or unfulfilled, or in remedy for tort capable of being insisted on or already insisted on, or in any other right, whether by way of condition or otherwise, legal or equitable, which can be, or has been exercised or has accrued, and whether such right could or could not be enforced by the insurer in the name of the assured by the exercise or acquiring of which right or condition the loss against which the assured is insured, can be, or has been diminished."

In *Darrell v. Tibbitts,* supra, it appeared that under the terms of a lease the lessee was obligated to repair

damage to the leased building (with exceptions not involved in the case). The building was damaged by an explosion of gas, and the city of Brighton, whose negligence caused the explosion, compensated the lessee. The latter restored the building. The lessor had taken out a policy of insurance which included coverage against the casualty which occurred. The insurance company paid the loss in ignorance of the terms of the lease. Learning afterwards of the lessee's obligation to repair and that he had complied with it, the company sued the lessor to recover a sum equal to the insurance money paid by it. The court held, on the basis of the principles above stated, that the company would have been subrogated to the lessor's right under the lease to require compliance with the lessee's covenant to repair, and, since the lessee had fully compensated the lessor, the amount of the insurance money must be restored to the company in order to prevent the lessor from receiving double indemnity. It is to be observed that the fact that the lessee had been compensated by the city was not treated by the court as a relevant factor in the decision.

*Castellain v. Preston,* supra, is a similar decision. The owners of property on which they had taken a policy of fire insurance contracted to sell it. A fire occurred before the purchase price was fully paid. The insurance company paid the loss in ignorance of the existence of the contract of sale. Later the purchasers paid the balance of the purchase price. In an action on behalf of the insurance company against their insured it was held that the company was entitled to recover the amount of the insurance money so paid. *Darrell v. Tibbitts* was deemed controlling and the reasoning of that case was re-affirmed.

The doctrine of these decisions seems to have been foreshadowed in the earlier case of *North British and Mercantile Insurance Co. v. London, Liverpool, and Globe Insurance Co.,* L. R. 5 Ch. Div. 569 (1877), which involved a bailment of goods. Precisely the same argument against the insurer's right of subrogation to the rights of the bailor appears to have been made in that case as the defendants make here, as is shown by the following excerpt from the opinion of Mellish, L. J.:

> " * * * Mr. Fry made a distinction between whether it was tort or whether it was contract. What it really is is that which is a very common thing in our law, namely, tort arising out of contract. The relation of the parties entirely depends upon contract, but at the same time it is so far tort that you might have sued on it according to the old law in an action on the case."

The English doctrine is followed in *Larner v. Commercial Union Assur. Co.,* 127 Misc. 1, 215 N. Y. S. 151; *Chicago, St. L. & N. O. R. Co. v. Pullman Southern Car Co.,* 139 U. S. 79, 35 L. ed. 97, 11 S. Ct. 490; *F. H. Vahlsing v. Hartford Fire Ins. Co.,* (Tex. Civ. App.) 108 S. W. (2d) 947. See, also, *Continental Ins. Co. v. Bahcall, Inc.,* 39 F. Supp. 315 (Dist. Ct. E. D. Wis.); 26 C. J., Fire Insurance, 458, § 620; 46 C. J. S., Insurance, 178, 179, § 1211; 5 Joyce on Insurance (2d ed.) 5913, § 3572.

*Plate. Glass Underwriters' Mutual Insurance Co. v. Realty Co.,* 219 Mo. App. 186, 269 S. W. 659, represents a contrary view. The decision is accurately summarized in the syllabus as follows:

> "Insurance company insuring a tenant against loss by breakage of plate glass window becomes primarily liable to him for breakage thereof, as it insured the property itself and not the debt due

tenant, and company by paying for repair thereof did not become subrogated to rights of tenant as against landlord, who under provision of lease has been obligated to repair damage.''

The court disapproved *Darrell v. Tibbitts,* saying that it was opposed to the weight of authority. Among the cases cited to support the holding is *Milwaukee Mechanics' Ins. Co. v. Ramsey,* supra, a decision of this court. The facts of that case were as follows: Ramsey, the defendant, insured his laundry against loss by fire in the sum of $2,000.00, making the loss payable to the Tillamook County Bank, as mortgagee, as its interest might appear. During the term of the policy the property was destroyed by fire. Ramsey and the bank sued the insurance company to recover on the policy. Ramsey's action failed because it was shown that he had violated a condition of the policy; but the bank recovered a judgment which the insurance company paid. The company then sued Ramsey, claiming to be subrogated to the rights of the bank under the note and mortgage against him. This court held that the insurance company was not so subrogated. There are important differences between the facts of the two cases, one of them being that in the Oregon case it was the party against whom the right of subrogation was asserted who had purchased and paid for the insurance policy.

We do not find in the Ramsey case or in any other of our decisions a clear and well-defined enunciation by this court of its position with respect to the question involved in such cases as *Darrell v. Tidbitts* and *Castellain v. Preston,* in which no element of tort was involved. We think it unnecessary, however, to determine now whether the doctrine of those cases should be followed by this court, for, while the right to which

the plaintiff claims to be subrogated is one that arises out of a contract between the insured and a third party, it is a right the enforcement of which depends upon proof that the fire which destroyed the subject of the bailment was caused or permitted by the tortious conduct of the defendant. "It is tort arising out of contract", as Lord Mellish said. The plaintiff could, of course, have alleged such tortious conduct in its complaint, and concededly then the complaint would have stated a cause of action. But no sufficient reason is apparent why the plaintiff should be limited to a pleading of that kind. Subrogation "gives to the substitute all of the rights, priorities, *remedies,* liens and securities of the party for whom he is substituted." (Italics added.) *United States F. & G. Co. v. Bramwell,* 108 Or. 261, 277, 217 P. 332, 32 A. L. R. 829; *Schiska v. Schramm,* 151 Or. 647, 651, 51 P. (2d) 668. The remedy here invoked by the insurance company was open to McNutt Bros., the bailors. We think it should be equally available to the insurance company.

This conclusion finds support in *Potomac Insurance Co. v. Nickson,* 64 Utah 395, 231 P. 445, and *Stevens v. Stewart-Warner Speedometer Corp.,* 223 Mass. 44, 111 N. E. 771, which were cases involving the theft of automobiles while in the possession of bailees. In each an insurance company, which had insured the car against theft, was held to be subrogated to the rights of the insured arising out of the breach of the contract of bailment.

We are of the opinion that it was error to grant the motion for judgment on the pleadings, and the judgment is, therefore, reversed and the cause remanded for further proceedings.

KELLY, J., did not participate in this decision.