Argued July 9, reversed with directions July 29, 1959

# THE UNITED PACIFIC INSURANCE COMPANY
## *v.* SCHETKY EQUIPMENT COMPANY

342 P. 2d 766

*John L. Schwabe,* Portland, argued the cause for appellant. With him on the briefs were Mautz, Souther, Spaulding, Denecke & Kinsey, James B. O'Hanlon, and Douglas M. Thompson, Portland.

*Robert R. Rankin,* Portland, argued the cause for

424

respondent. With him on the brief was Malcolm J. Montague, Portland.

Before McAllister, Chief Justice, and Lusk, Sloan and Millard, Justices.

SLOAN, J.

On July 23, 1952, plaintiff issued a policy of insurance to School District 21J, Marion County. The policy required plaintiff "To pay for loss or damage to the automobile * * * caused (a) by fire * * *." The "automobile" was a school bus owned by the district. The policy period expired July 23, 1953. In late June of 1953 the district delivered the insured bus to defendant for extensive repair. On July 1, 1953, the bus was damaged by fire at defendant's place of business. For the purpose of this appeal we will consider the fire to have been caused by defendant's negligence. The trial court so found and there is substantial evidence to support the finding.

■ The contract between the district and defendant for the original repair of the bus leaves no doubt that the defendant occupied the status of a bailee. 8 CJS 274, Bailments § 27(3). It is conceded that defendant owed the district the duty to return the bus in as good a condition as it received it. Its negligent conduct which caused the fire and damage to the bus rendered the defendant liable to the district for that damage. *National Fire Ins. Co. v. Mogan*, 186 Or 285, 206 P2d 963. The plaintiff was notified of the fire loss and, in proper time, proof of loss for the damage was submitted to plaintiff by the district.

In the meantime there occurred the peculiar arrangement which fomented this lawsuit. The defendant sought and obtained the permission of the district

to repair the damage to the bus caused by the fire. At that time the defendant did not notify the district that it intended to make the repair at the cost of the district. The evidence discloses that when defendant was seeking permission from the district to repair the bus nothing was said with reference to any payment for repairing the fire damage. The clerk and the chairman of the district board testified that the defendant made no mention of holding the district for the cost of the repair. The clerk also testified: "he [Mr. Schetky] told us that we had nothing to worry about, that it would be taken care of." In fact it is significant that, after the repair was under way, the defendant, by Mr. John Schetky, an officer of the company, mentioned to the district board that to repaint only the part damaged by the fire would spoil the appearance of the bus. He suggested to the board that the remainder of the bus be painted at the cost of the district. This the district agreed to do. Again, on that occasion, the defendant made no mention that it expected the district to pay any part of the actual repair of the fire damage. Defendant did repair the bus and returned it to the district early in September, 1953. The delivery of the bus was followed about a month later by a bill from defendant to the district for the cost of the fire damage repair. It is pertinent to mention that the bill for the mechanical repair of the bus originally authorized for which it was taken to defendant's place of business was received immediately after the delivery of the bus to the district in early September. The bill for the fire damage repair was not received until after October 13, 1953. The unexpected arrival of this bill started the chain reaction culminating here.

We will not elaborate on the negotiations and

events that followed. The plaintiff had investigated the cause of the fire and had concluded that it was caused by the neglect of defendant. When, therefore, the defendant presented its bill for the repair, the plaintiff requested the district to refuse to pay the defendant and submit to a lawsuit, if necessary, to determine the liability of the defendant to the district. The plaintiff agreed to bear all the cost and hold the district harmless. The defendant, of course, denied its negligence. This situation continued until March or April of 1954. In the meantime defendant and its attorneys were active in demanding payment from the district and in stimulating the district to demand payment of the loss from plaintiff. We mention one action of defendant to indicate the size and kind of "needle" it was using on the plaintiff. This is important for later mention. On December 14, 1953, Mr. Schetky, an officer of the defendant company, came to the home of the school district clerk. He there wrote in his own hand a letter to the state insurance commissioner. This letter purported to be from the district school board and the clerk was induced to sign it. The letter reviewed the events we have described and sought the assistance of the insurance commissioner in forcing plaintiff to pay defendant's bill for the fire damage. Some of the language of the letter is material to the outcome of this case, bearing in mind that it was actually written by Schetky and not by the officer of the district:

> "We are writing this letter because we think United Pacific should pay Schetky Equipment Corp. as our policy covers all fires on our busses *and then let United Pacific Insurance Company sue Schetky Corporation if they want to.* We members of the School Board are all very busy and would hate to leave our farms and businesses all the time

for a court trial, which United Pacific recommends."
(Italics ours.)

It is interesting to note that in answer to this letter the insurance commissioner responded by advising the district he had investigated the matter and recommended that the district comply with the request of plaintiff and submit to legal action.

Nevertheless, the pressure continued and finally plaintiff, as its policy bound it to do, delivered its draft to and payable to the school district in the sum of $2,161.43, the amount of defendant's bill to the district. It should also be mentioned that this draft was delivered following a letter to plaintiff from the district dated March 12, 1954. This letter advised plaintiff that at a meeting of the district board held the day before it was decided to demand payment from plaintiff on the policy. The letter also stated:

> "The board does not approve being sued by any concern and is of the opinion that the insurance representative should handle the matter. *The directors would be willing to assign subrogation rights.*" (Italics ours.)

■ The subrogation rights were assigned to plaintiff although this was unnecessary. The contract of insurance reserved such rights to plaintiff and it was entitled thereto as a matter of law. *National Fire Ins. Co. v. Mogan,* supra, 186 Or 295. The district endorsed the draft to defendant and delivered it thereto. Plaintiff made demand upon defendant for reimbursement of its loss. Defendant refused and this action followed.

The trial court found as a matter of law that when plaintiff paid the district it "was acting as a mere volunteer, not only permitting but authorizing money to be paid to the defendant whom plaintiff claims was guilty of negligence," and that "Plaintiff by said

voluntary payment waived its right to any recovery of payments made and is now estopped from any recovery thereof." The court did find, however, that plaintiff acquired subrogation rights against defendant, and, as we have mentioned, that the fire damage was caused by defendant's negligence.

The evidence we have thus far recited is sufficient to indicate that the payment made by plaintiff was not "voluntary," either in law or fact. In fact, it is most anomalous, to say the least, that defendant can now contend that the payment was voluntary when it was the goading of the district by defendant which caused the district to demand payment under the contract of insurance; particularly when defendant knew and requested that the payment was to be accompanied by subrogation of the right of action possessed by the school district. However, the "insurer is not a volunteer if he sees fit to pay in discharge of an existing legal duty * * *." Vance on Insurance (2d ed) 673, §§ 175-177. Plaintiff "is not officious [volunteer] where he was under a duty to make the payment, as for example where he was a surety." Restatement, Restitution, Comment to § 162, Subrogation p 655. *Western Casualty and S. Co. v. Milwaukee G. C. Co.*, 213 Wis 302, 251 NW 491. Can it be said that the plaintiff "not only permit[ted] but authorize[d] money to be paid to the defendant * * *." The evidence does not warrant such a finding or conclusion. It is contended that this authority or permission was extended by a letter transmitting the draft to the district by a local agent of plaintiff and by the fact that plaintiff knew, when it forwarded its draft, that it was to be delivered to defendant. The evidence cannot be so construed. The finding is contrary to the terms by which the payment was made.

The letter of demand by the district, which we have mentioned, provides the payment would be made and received on condition of subrogation of all existing rights. In fact this was clearly understood by all the parties, as witness the letter to the insurance commissioner written by defendant's authorized agent. The plaintiff had no recourse but to pay in accordance with the proof of loss and had no control over the use the school district would make of the payment. Plaintiff did not pay until it had reserved its subrogation rights. There is no basis for such a conclusion. However, this is preliminary to and not the decisive issue in the case.

■ In the presentation of this appeal the parties present various arguments and issues. The issues arise both on questions of pleading and on the findings of the trial court, some of which we have mentioned. We will not extend these pages by attempting to explain the procedural means by which the deciding issue is presented. Suffice it to state the sole issue we believe to be determinative of this case. That issue is: Did the payment by the district to defendant of the amount of the repair bill in question constitute such a discharge and release of the district's cause of action against defendant as to bar plaintiff's right of action? As we have said, when the plaintiff delivered its draft to the district it knew the district intended to transfer it to defendant in payment of defendant's claim for repair. When the district did endorse and deliver the draft to defendant, did it abolish plaintiff's cause of action?

■ In the usual case the wrongdoer cannot escape his liability to the subrogee by obtaining a release from the subrogor after the latter has been paid in accord-

ance with a legal duty of the subrogee to pay and the wrongdoer has knowledge of such payment.

"After the insured has received payment under a policy, the tort-feasor, having knowledge of this fact, cannot defeat the insurer's right to subrogation by any settlement with the insured. If with knowledge of the previous payment by the insurer the tort-feasor does procure a release from the insured, such release will constitute no defense as against the insurer, * * *." Vance on Insurance (2d ed) 676, §§ 175-177.

From 2 Wood on Fire Insurance (2d ed) 1086, §§ 501-502, we take the following:

"When such wrong-doer *knowing* that the insurer has paid the whole or a part of the loss under a policy of insurance upon the property, settles with the insured and takes a release from him, such settlement and payment is treated as a fraud in law, and he will still remain liable to the insurer in an action, in the name of the insured, for the amount paid by him under its policy. The assured may, where the company is entitled to subrogation be enjoined from settling with the party doing the wrong.

"Therefore, it follows that, in cases where the insured has also a remedy for his loss against a third person, he may pursue either the insurer or the wrong-doer, or both at the same time, but he can have but one satisfaction for the loss. If he pursues the wrong-doer, and collects the amount of his loss against him, *he cannot also pursue the insurer. Thereby the insurer is discharged.* If he pursues the insurer, and secures satisfaction for his loss, in whole or in part, from him while his remedy against the wrong-doer is not thereby defeated, *yet he stands to the insurer in the relation of a trustee to the extent of the amount paid under the policy,* and cannot release the right of action, nor the action itself, if one has been commenced,

so as to defeat the rights of the insurer to reimbursement from any recovery from such wrongdoer for the injury producing the loss."

The same rule is stated in 5 Joyce, The Law of Insurance 5888, § 3544:

"If third parties who may be liable to the insured for the loss effect a settlement with the latter and obtain a release from all liability, and this is done with knowledge of the fact that the insurers have already paid to the insured the amount of their liability to him, such settlement and release will in no way affect the insurer's right of subrogation as against such third parties, since the settlement and release will be in fraud of the insurers' rights, and consequently void."

To the same effect see the extensive work of Appleman, Insurance Law and Practice, Vol 6, § 4091 et seq.

■ The rule stated in the above texts is supported by the cases therein cited. We will refer only to the case most frequently relied on, both in the texts and later cases: *Ocean A. & G. Corp. v. Hooker Electrochem. Co.*, 240 NY 37, 47, 147 NE 351:

"* * *. The subrogee acquires rights which as between it and the insured are beyond the power of cancellation and destruction by the latter and under our practice is entitled to enforce these rights of action in its own name and without joining the insured as a party. * * *.

"* * * * *

"* * *. But by whatever terms we characterize the operation it seems to us clear that a primary wrongdoer cannot make with the insured a settlement which will deprive of its known rights the insurer who is not a party to the settlement and has made its payment before the settlement." Op. cit., 240 NY 51.

In *Salzwedel v. Pinkley*, 140 Or 671, 15 P2d 718,

the plaintiff sued defendant for the destruction of plaintiff's barn by fire caused by defendant's negligence. By a plea in abatement the defendant alleged that plaintiff had been paid the sum of $800 by a fire insurance company as a result of the same loss. The plaintiff, in response, agreed to waive his damages to the extent of the $800. The court held that the company should have been made a party plaintiff. "The mere fact that plaintiff saw fit to waive his interest in the claim of damages to the extent of $800.00 could not affect the rights of the insurer * * *."

If, in this case, the fire damage had been repaired by some other person and the district had applied the proceeds of its insurance policy on the payment of that repair there could be no question that such payment could not constitute a bar, a waiver, an estoppel or an acquiescence on the part of the insurance company as against this defendant. That much is certain beyond doubt. In the facts as they actually exist here there is really little difference. The defendant first induced the district to permit it to repair the fire damage to the bus. And we emphasize that this permission was granted without any request, agreement or a word being spoken that the defendant expected the district to stand liable for the payment of the repair. The defendant then delivered the repaired bus to the district, with still no word or request for payment. Having done so, it then contended that, by this slight of hand: "We have performed our bailment. We have returned to you, the district, your property in as good a condition as that in which we received it. Our bailment relationship has now terminated."

Then, about 30 days later, the defendant again appeared before the district board in the form of a bill for the cost of repair. This time it presented another face and, in effect, it said: "We are now before you as the repairman. You owe us $2,161.43 for the repair of the bus. You are covered by insurance, collect the insurance due on your policy, pay us. We will, then, both be whole." But it did not tell the district that it would later contend that by this means the district would waive the acknowledged right of the insurance company to sue defendant for the then alleged negligence. In fact, the testimony of the clerk and chairman of the district board reflects that the district did not take any action which could be considered a waiver of any claim that it or the plaintiff had against the defendant. It signed the subrogation agreement prior to receiving the draft from plaintiff with full knowledge of the purpose for which that document was executed. The only inference that can be gathered from all the evidence is that the district was demanding payment of the insurance but with an express intent *not* to discharge any right of the plaintiff but rather to preserve it. The clerk testified:

"Q And then you decided that you did not want to defend as a direct defendant yourself?

"A That is right.

"Q But let the insurance company subrogate to your rights against you [sic]?

"A That is right, which was done."

The evidence in this case in the form of the letters we have already mentioned, and others, as well as evidence otherwise presented, establishes that our

version of this transaction, as we have simplified it, is the actual transaction.

■ The rule which we have quoted from the texts is a sound one. To hold otherwise would permit a wrong-doer and an insured to perpetrate the equivalent of fraud upon an insurer and the latter would be without remedy. The facts here are unique. Our research has disclosed no similar situation and none has been cited to us. We find no basis or reason, however, to hold that the rule preventing a subrogor from bargaining away the subrogee's rights should not apply to the instant case. It is to be remembered that: "This right of subrogation is based upon principles of equity and natural justice. We recognize at once the fairness of the proposition that an insurer who has been compelled by his contract to pay to or in behalf of the insured claims for damages ought to be reimbursed by the party whose fault has caused such damages and the principle of subrogation ought to be liberally applied for the protection of those who are its natural beneficiaries." *Ocean A. & G. Corp. v. Hooker Electrochem. Co.*, supra, 240 NY 47.

Subrogation "is a remedy which is highly favored. The courts are inclined to expand rather than to restrict the principle. Although formerly the right was limited to transactions between principals and sureties, it is now broad and expansive, and has a very liberal application * * * the principal being modified to meet the circumstances of the individual case." *Bates v. Cleaver,* 114 NJL 346, 176 A 889, 892.

Based upon these well-recognized principles (*United States F. & G. Co. v. Bramwell,* 108 Or 261, 217 P 332) as general guides, we hold that the payment by the school district did not, and could not, under the

circumstances we have related form a bar to this plaintiff's cause of action. We think the rule preventing release by the subrogor has more rather than less binding effect upon the particular facts of this case. Here the defendant not only knew of the payment by the plaintiff but induced it by the conduct we have recited. It knowingly invited this lawsuit. If defendant had performed the duty imposed upon it, that was, to restore the property to the district without obligation to the district, *National Fire Ins. Co. v. Mogan,* supra, the claim against plaintiff could not have been made. *Darrell v. Tibbetts,* LR 5 QBD (1879-1881) 560, 562. On the other hand the plaintiff had no recourse but to perform its legal duty and pay. That obligation arose simultaneously with the fire and upon presentation to it of a proper proof of loss it could not avoid the obligation. *Darrell v. Tibbetts,* supra. It could not pay the money in escrow, pending the result of this case, nor do other than it did by paying and at the same time preserving its right of subrogation. The subsequent act of the district did not bar the right thereby acquired. Not only the law but the equity, which we are bound to apply, sustains the plaintiff in this case.

The case is reversed with directions to enter a judgment for plaintiff.