Argued March 7, reversed and remanded April 24, 1968

NORTH-WEST INSURANCE CO., *Appellant, v.* WESTERN PACIFIC INSURANCE COMPANY, *Respondent.*

439 P. 2d 1006

*David C. Landis,* Portland, argued the cause for appellant. With him on the brief were Morrison & Bailey, Portland.

*Walter H. Sweek,* Portland, argued the cause for respondent. On the brief were Vergeer, Samuels, Cavanaugh & Roehr and Frederic P. Roehr, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

## SLOAN, J.

■ Plaintiff seeks to recover the amount it paid to satisfy a claim for property damage which plaintiff mistakenly believed had been covered by its policy. What happened was that the insured had a policy with plaintiff for one automobile and another policy with defendant for a second car. One of the cars was involved in an accident for which the insured was liable. The car involved was actually covered by defendant's policy. The insured reported the accident to his insurance agent. The agent, by mistake, reported to plaintiff that the car covered by its policy was involved in the accident and plaintiff paid the amount of the claim. Later the mistake was discovered and plaintiff brought this action to recover from defendant the amount paid. The trial court, sitting without a jury, allowed a motion for a directed verdict, on the ground that the complaint failed to state a cause of action. We disagree.

■ The theory of the defense was that this was an officious, voluntary payment for which no recovery can be had. This defense overlooks Section 43(1) and Section 162 of the Restatement on Restitution[1] and on

---

[1] *Section 43(1).* "A person who, by payment to a third person, has discharged the duty of another or has released another's property from an adverse interest, doing so unintentionally or acting because of an erroneous belief induced by a mistake of

our decisions on the subject. The reporter's notes to Section 43(1) gives this explanation of its intent:

"The cases involving the rule stated in this Section are chiefly those where the remedy granted is by way of subrogation. The basis for restitution, however, is the unjust enrichment of the beneficiary and the fictitious step of implying an assignment can be omitted, except where subrogation would result in a security interest being created.  *  *  *

"The cases are not unanimous in arriving at the result stated in this Section largely because of the idea current before the allowance of assignments that one cannot become creditor of another without such other's consent. The earlier cases allowing recovery were mostly those where there was coercion rather than mistake, as where an unpaid seller of land, in order to protect his security interest, paid taxes which a buyer should have paid. Some courts apparently have not yet recognized that there is not an officious payment if payment is by mistake and without coercion. It is believed, however, that the rule stated in this Section is not only in accord with the underlying principles of restitution but also with the present trend of decisions. See Hope, *Officiousness,* 15 Corn. L. Q. 25, 205, at page 217."

This court, in *Hult v. Ebinger,* 1960, 222 Or 169, at 189, 352 P2d 583, 592, in language similar to that quoted from the reporter's notes, recognized that the

fact that he was thereby discharging a duty of his own or releasing property of his own from a lien, is entitled to restitution from such other of the value of the benefit conferred up to the value of what was given, unless the other disclaims the transaction."

*Section 162.* "Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder."

rule denying recovery for payment induced by mistake of fact had little, if any, vitality remaining:

> "It has been suggested that the origins of the 'volunteer' rule are in the individualistic bent of the English national character and in the common law regard for privity of contract. Hope, op cit, 15 Cornell L Q 25, 29. The rule has been traced to the case of *Grymes v. Blofield,* Cro. Eliz. 541 (1598) which held that a debt could not be satisfied by a stranger and more generally to the fear of champerty and maintenance which found expression in the early common law restricting the assignability of choses in action. Note, 1938, 24 Va L Rev 771. It is obvious that the modern practice which permits free alienability of choses has robbed the 'volunteer' rule of much of its rational justification."

See also *United Pac. Ins. Co. v. Schetky Equip. Co.,* 1959, 217 Or 422, 342 P2d 766, and *United States F. & G. Co. v. Bramwell,* 1923, 108 Or 261, 277, 217 P 332.

The complaint in the instant case was not artfully prepared but as against a motion for directed verdict on the ground that the complaint fails to state a cause of action, it is adequate to meet that test.

The judgment is, therefore, reversed and remanded for a new trial.