NYTCO SERVICES, INC., *Respondent*

*v.*

PACIFIC TEOLLISUUS, INC.,et al, *Appellants.*

(No. 7421, SC 25589)

590 P2d 206

Clayton C. Patrick, Salem, argued the cause for appellants. With him on the briefs was Roy Dwyer, of Roy Dwyer, P. C., Eugene.

Karen C. Allan, Medford, argued the cause for respondent. With her on the brief were Stuart E. Foster, and Frohnmayer, Deatherage, Foster & Purdy, Medford.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, and Linde, Justices.

HOLMAN, J.

**HOLMAN. J.**

Plaintiff, NYTCO Services Inc., (NYTCO), brought a proceeding against defendants Pacific Teollisuus, Inc., (Pacific) and Robert L. Praegitzer to recover for money paid by NYTCO to a bank upon an indebtedness of Pacific. At trial Pacific and Praegitzer consented to entry of judgment against them. San Martine Properties, Inc., and the United States of America defaulted and Praegitzer did not appeal. The sole issue on appeal is the propriety of the judgment against Pacific upon its counterclaim against NYTCO which is based upon NYTCO's alleged failure to retain and account for logs bailed by Pacific to NYTCO.

Pacific operated a plywood mill and wanted credit from the Western Bank (the bank). It entered into an agreement with NYTCO for NYTCO to assure the bank of the continued existence of a log inventory at Pacific's mill upon the security of which the bank would advance credit to Pacific. Pacific, NYTCO and the bank then entered into a three-party agreement which resulted in NYTCO's instituting an inventory certification control service by which NYTCO would, on a continuous basis, issue certificates to the bank guaranteeing the amount of Pacific's inventory. Pacific and NYTCO also entered into a lease by which NYTCO leased that portion of Pacific's premises upon which the log inventory was stored. Under these agreements Pacific had access to the inventory as long as the inventory stayed above a minimum level established by the bank. NYTCO made an original inventory of the logs and hired two employees of Pacific (for which Pacific reimbursed them) to represent it and to keep track of the inventory.

After operation for a period of months, the inventory as kept by NYTCO was found to be short approximately 1.4 million board feet and insufficient to cover the certificates NYTCO had issued to the bank as well as insufficient to pay the loan for which it was security. NYTCO paid the bank the difference

between the value of the logs remaining and the amount of the bank's loan to Pacific. It received judgment against Pacific and Praegitzer for the amount so paid. The trial court ruled that NYTCO was not responsible to Pacific on its counterclaim as the result of the shortage of the inventory.

Pacific claims that it proved NYTCO was a bailee of the logs and that NYTCO then had the duty of going forward to prove it was not responsible for the shortage, which it could not do because it was unable to account therefor. Pacific's contention is a correct statement of the law if the arrangement was a bailment of the inventory for the benefit of Pacific, if NYTCO was unable to explain the shortage, and if there was no binding agreement that NYTCO was not to be responsible in such circumstances. *National Fire Ins. Co. v. Mogen et al,* 186 Or 285, 291-93, 206 P2d 963 (1949). We affirm the judgment of the trial judge because we conclude the arrangement did not result in a bailment of the inventory by Pacific to NYTCO.

First, Pacific claims NYTCO had possession of the logs because NYTCO leased from Pacific the premises upon which the logs were stored. Possession of the premises does not necessarily give NYTCO the kind of possession of logs which is required to constitute bailment. The three-party agreement provided that NYTCO, at its discretion, could institute whatever control measures it deemed necessary for the purpose of controlling the inventory *"to supplement Pacific's control measures."* It also contemplated and provided that Pacific be permitted access to the inventory of the logs in order to operate its mill as long as there was sufficient inventory to satisfy the bank that its loan was adequately secured. Pacific continued to have access to its inventory, as it had had previously, except for one instance when it had to make an additional payment on its indebtedness to the bank before being permitted continued access.

In addition, all of NYTCO's duties concerning securing the logs ran to the bank—not to Pacific. Pacific seems to put emphasis and importance upon what it calls the basic obligations of NYTCO which it quotes from the three-party agreement, as follows:

"2. NYTCO further agrees as follows:

"a. To institute, supervise, control and maintain records on COMPANY's [Pacific's] and NYTCO's premises which are satisfactory for the performance of its obligations hereunder;

"b. To deliver to HOLDER [the bank] an initial Inventory Certificate based on a physical inventory in quantities acceptable to HOLDER certifying to the value of this inventory computed at values supplied by COMPANY and approved or otherwise designated or determined by HOLDER and to provide HOLDER additional Inventory Certificates at periodic intervals agreed upon between HOLDER and NYTCO;

"c. To comply with written instructions received and accepted by NYTCO from HOLDER specifying the manner in which COMPANY may remove inventory subject to HOLDER's interest and to allow no further deliveries of this inventory by COMPANY when the limit set forth in the HOLDER's instructions has been reached; and to permit further deliveries only upon the advice of the HOLDER.

"d. To be liable to HOLDER for any loss HOLDER may sustain as a result of reliance upon NYTCO's Inventory Certificate(s) to the extent that such Certificate(s) are incorrect, or as a result of NYTCO's failure to perform its obligations as set forth in this Paragraph (2).

"e. To report to HOLDER any instances of improper care or condition of the inventory which NYTCO may reasonably observe in the course of its regular inspections of the inventory or as revealed by NYTCO's bonded representatives, and to report to HOLDER should the inventory be lost or destroyed by any unforeseen cause;

"f. To provide HOLDER with a monthly statement of its account with COMPANY."

These provisions demonstrate that NYTCO's obligation for the security of the inventory ran to the bank

[127]

and not to Pacific. NYTCO and Pacific had a separate agreement just between themselves, which had the following provision:

"That COMPANY [Pacific] shall have the sole responsibility for the care and condition of inventory and for the maintenance of safe and satisfactory storage conditions for such inventory, and said COMPANY hereby holds NYTCO harmless from any damage, loss or shortage that may come to any inventory stored on COMPANY's premises or on premises in which NYTCO stores such inventory for COMPANY."

Pacific claims that this provision is unenforceable as against public policy because *Voyt v. Bekins Moving & Storage,* 169 Or 30, 119 P2d 586, 127 P2d 360 (1942), holds that an agreement by a public warehouseman to relieve himself of the consequences of his own negligence to one to whom he has issued a certificate is contrary to public policy. NYTCO issued no warehouse receipt or guaranty of inventory of any kind to Pacific; its obligation ran to the bank which it paid when the shortage of logs was discovered. The agreement between Pacific and NYTCO absolving NYTCO of any responsibility for a shortage demonstrates that, as to Pacific, NYTCO's possession of inventory was not contemplated by the parties as being the kind of possession which would be the basis of a bailment. In *Owen v. Bradley,* 231 Or 94, 103, 371 P2d 966 (1962), we said:

"* * * A bailment will not be implied where it appears that it was the intention of the parties, as derived from their relationship to each other and from other circumstances of the case, that the property was to be held by one party in some capacity other than as bailee. * * *."

There is not the slightest indication that the parties contemplated that NYTCO's possession was to be that of bailee for Pacific. It became a guarantor to the bank of the extent of Pacific's inventory. The agreement to limit NYTCO's liability to Pacific for a shortage was rational and reasonable considering that both parties had access to the inventory and Pacific was using it on

[128]

a daily basis to operate its mill. These parties were two large business enterprises bargaining over a business matter in which NYTCO became the guarantor of Pacific's inventory to a third party so Pacific could borrow money. NYTCO neither undertook nor owed a contractual or public duty to Pacific of safe care of the inventory as would make NYTCO Pacific's bailee of the logs.

Pacific puts strong reliance upon *Scott v. Lawrence Whse. Co.,* 227 Or 78, 360 P2d 610 (1961). Its reliance is misplaced because in *Scott* a warehouse receipt was issued and the party to whom the duty under the receipt as bailee was owed was the party in the position of the bank in this case.

The judgment of the trial court is affirmed.